■ RECON CAR CORP. OF NEW YORK, Respondent, v CHRYSLER CORPORATION, Appellant.—In an action to recover damages based on a theory of quantum meruit in which the defendant has counterclaimed, *inter alia,* for damages for breach of contract, the defendant appeals from a judgment of the Supreme Court, Queens County (Galfunt, J. H. O.), dated July 11, 1985, which, after a nonjury trial, is in favor of the plaintiff and against it in the principal sum of $741,139.

Ordered that the judgment is reversed, on the law and on the facts, without costs or disbursements, the complaint is dismissed, the defendant is granted leave to serve amended counterclaims in accordance herewith within 20 days after service upon it of a copy of this decision and order, with notice of entry, the counterclaims, as amended, shall be severed from the action and deemed a complaint, the plaintiff is granted leave to serve an answer to the complaint within 20 days after service thereof upon it, and the matter is remitted to the Supreme Court, Queens County, for the purpose of completing whatever additional pretrial discovery is deemed necessary, and for a new trial.

The weight of the evidence adduced at trial establishes the following:

As early as November 5, 1970, Kenneth Mann, the president of the plaintiff Recon Car Corp. of New York (hereinafter Recon) requested that his service station be authorized by the

defendant Chrysler to service Chrysler vehicles operated by AVIS Rent-A-Car. Chrysler agreed, and since that time, Recon has been in the business of servicing Chrysler vehicles which are leased by various rental car agencies. Also, Mr. Mann signed two written agreements, one dated July 6, 1971, and another dated August 31, 1972, as well as two subsequent extension agreements. In these contracts, Recon agreed to perform all warranty service on Dodge recreational vehicles, and agreed to be bound by the terms of Chrysler's Warranty Policy & Procedure Manual.

The evidence contained in this record establishes without doubt that, although the written contracts referred to above applied only to recreational vehicles, the parties, by their conduct, manifested a mutual agreement that the warranty service work done by Recon on *all* Chrysler vehicles—recreational or nonrecreational—would be reimbursed in accordance with the terms of Chrysler's Warranty Policy & Procedure Manual. Recon submitted claims for work on nonrecreational vehicles on standard work repair order forms, using the same procedure as applied to recreational vehicles. Recon recognized an obligation to use Chrysler parts with respect to both recreational and nonrecreational vehicles. Mr. Mann testified that he understood that Recon's claims for all reimbursements with respect to warranty repair work done for Chrysler would be subject to the procedures contained in the Warranty Policy & Procedure Manual.

Pursuant to the procedures outlined in Chrysler's manual, Chrysler would deliver parts to Recon and bill Recon's "[p]arts [a]ccount" for the price. Recon would supposedly use those parts, as needed, to perform warranty service work. Recon would thereafter submit warranty repair orders (hereinafter WRO) to Chrysler for reimbursement with respect to both parts and services. In other words, the WRO claims included charges for both parts and labor, so that Chrysler could, instead of reimbursing Recon for the portion of the claim reflecting parts, simply credit Recon's parts account. Pursuant to Chrysler's manual, all reimbursements of WRO claims were made on a tentative basis. All claims were subject to audit pursuant to provisions in the manual and every WRO form stated that "all claims [are] approved subject to audit".

Pursuant to the procedure outlined in the manual, Chrysler representatives conducted an audit of Recon's records during the spring and summer of 1978. Recon's business records were found to be deficient due to the absence of perpetual inventory records making it difficult or impossible to trace the history of

particular parts. The auditors analyzed Recon's parts inventory as of June 1, 1976, and calculated the amount of Chrysler parts purchased by Recon during the two years following that date as reflected in Recon's parts journal and general ledger. The Chrysler auditors determined, based upon their review of the available documents, that Recon had claimed reimbursement for substantially more parts (and associated services) than Recon had actually ever had available for use. The auditors concluded that a total discrepancy of $497,929 existed for the year June 1, 1977 to June 9, 1978, and that a similar discrepancy of $486,924.53 existed for the year June 1, 1976 to May 31, 1977. In sum, it appeared that Chrysler had paid almost $1,000,000 in claims during 1976 through 1978 which could not be substantiated.

Acting in accordance with the provisions of the Warranty Policy & Procedure Manual, Chrysler, after having received the results of its audit, instituted a "chargeback." Under this procedure, Chrysler continued to accept WRO claims from Recon, but, instead of reimbursing Recon, would apply the amount of such claim towards a reduction of the overpayments which Chrysler determined it had made during 1976 to 1978. The testimony of Mr. Mann establishes conclusively that he knew of the institution of the chargeback as early as January 1979 and that Recon, nonetheless, continued to perform warranty work on Chrysler vehicles for approximately the next five years, and during the pendency of this litigation.

Recon commenced this action on or about September 11, 1979, by service of a summons, which was followed by the service of a complaint dated October 2, 1979. The complaint purports to state a cause of action sounding in quantum meruit, that is, for the value of services performed and material supplied by Recon to Chrysler at Chrysler's request.

Chrysler interposed an answer which contained three counterclaims. The first two such counterclaims are based on the written agreement dated August 31, 1972, which, as previously noted, is applicable only to recreational vehicles. There are no allegations in these two counterclaims to the effect that the parties had an implied-in-fact agreement concerning the servicing of nonrecreational vehicles as well. With respect to the first counterclaim, Chrysler demanded judgment in the amount of $297,851, which represents the difference between Chrysler's overpayment of $497,929 during 1977 to 1978 and the extent to which such overpayment had been recouped through the chargeback program. In the second counterclaim, Chrysler demanded judgment in the sum of $430,000 based on

the overpayment reflected by the audit of Recon's records for 1976 to 1977. The third counterclaim based on fraud, demanded judgment for $727,851, the sum of the foregoing figures.

After Recon failed to reply to these counterclaims, the court (Rubin, J.), by order dated March 18, 1981, granted Chrysler's motion for leave to enter a default judgment, and, *inter alia,* directed an inquest as to the damages. No inquest took place, however, and the court (Lerner, J.), in a subsequent order dated February 14, 1984, directed that the inquest on the defendant's counterclaims be heard together with the trial of the plaintiff's main claim.

At the trial, the plaintiff attempted to establish the amount of its alleged damages by introducing into evidence a series of warranty claim statements received from Chrysler since the beginning of 1979. The trial court held that these claims statements indicate that a total of $816,657.73 worth of post-1979 warranty repair claims had been accepted by Chrysler, but not reimbursed. Instead, Chrysler had applied the amount of such claims either to Recon's parts account or to the chargeback in connection with the overpayments in 1976 to 1978. The trial court accepted this proof, and concluded, based on it as well as on subsequent testimony of Chrysler employees concerning the total amount of Recon claims which have not been reimbursed, that the total value of materials supplied and services rendered by Recon since 1979 was $958,381. The court also found that Chrysler had paid Recon's landlord the sum of $217,242 on Recon's behalf, so that, after an appropriate setoff, the final judgment in favor of Recon should be $741,139.

As to the defendant Chrysler's counterclaims, the court, having repeatedly ruled that Chrysler could not amend its pleadings to conform to the evidence, held that Chrysler had failed to show any breach of the 1972 written agreement relating to recreational vehicles and had also failed to prove fraud. Accordingly, the court determined that the counterclaims should be dismissed. The judgment appealed from awarded the plaintiff the principal sum of $741,139, but failed to provide for the dismissal of the counterclaims. This appeal ensued. We reverse, dismiss the plaintiff's complaint, and reinstate the defendant's counterclaims.

We find, both as a matter of law and as a matter of fact, that plaintiff failed to prove its claim for the value of the services rendered and materials furnished to Chrysler since

1979. As noted above, the evidence in the record establishes beyond any doubt that the parties, by their conduct, manifested an agreement that claims for reimbursement for warranty repairs of nonrecreational vehicles would be treated in the same manner as those claims relating to work on recreational vehicles. The parties, by their conduct, manifested an intent to modify the 1972 written agreement so as to expand its scope to cover all vehicles, recreational or nonrecreational. Modifications of written contracts may be proved circumstantially by the conduct of the parties *(Beacon Term. Corp. v Chemprene, Inc.,* 75 AD2d 350, 354, *lv denied* 51 NY2d 706; *Martin v Peyton,* 246 NY 213). Viewed somewhat differently, the conduct of the parties, as proved by the evidence in this record, indicates the existence of an implied-in-fact contract governing nonrecreational vehicles, the provisions of which parallel those of the written agreement relating to recreational vehicles. The contract exists as "evidenced by the acts of the parties, and not their verbal or written words" and is a true contract which "rest[s] upon an implied promise in fact" *(Miller v Schloss,* 218 NY 400, 406).

At oral argument, the attorney for Recon candidly conceded that the parties had engaged in a long-term business relationship, and that their conduct, with respect to nonrecreational as well as recreational vehicles, had been governed by the terms of the 1972 agreement, and Chrysler's manual.

Once the chargeback program had begun, it is clear that Recon could not reasonably have expected that Chrysler would directly reimburse Recon for the services it performed; Recon could only have expected that Chrysler would reduce the amount of Recon's preexisting debt in accordance with the terms of the parties' contract. Recon had been informed of the institution of the chargeback, and was, therefore, on notice that compensation for any future services would be by way of reduction in its preexisting debt to Chrysler, rather than by way of direct payment to Recon. Thus, Recon could recover a money judgment upon a theory of quantum meruit only upon a showing that the value of the services rendered after the institution of the chargeback exceeded the amount of the chargeback itself. However, there was a complete failure of proof on this score.

As previously noted, Recon relied on Chrysler's warranty claim statements as proof of damages. However, Mr. Mann admitted to being unable to segregate the portion of the total of those statements relating to parts from the portion relating to services. So much of the total of those statements as related

to parts was not recoverable by Recon, since those amounts would reflect parts which had been delivered to Recon by Chrysler, but not paid for. It is impossible to determine, based on these documents, the value of Recon's services with any degree of accuracy.

Recon argues on appeal that its damages were proven by Chrysler's counsel's having stipulated, at trial, that Chrysler had approved over $867,000 in warranty claims. However, Chrysler's acknowledgement that, pursuant to the parties' implied (if not express) contract, Recon was entitled to a credit in that amount has absolutely no relevance to the issue whether such amount represents the fair value of the work done by Recon. Thus, even assuming that the stipulation mentioned above might have constituted proof of damages had Recon based its action on its contract with Chrysler, the stipulation is nonetheless completely unavailing in an action based on a theory of quantum meruit.

Thus, Recon was given a full and fair opportunity to prove its cause of action based on quantum meruit, but completely failed to do so. This failure is the result of its having pleaded, and attempted to prove, a cause of action sounding in quantum meruit which is inappropriate where the parties have an express contractual relationship covering the same subject matter. The terms of the parties' written contract were treated by the parties as applicable to all work done by Recon. Never having proved, or even alleged, any breach of that contract by the defendant Chrysler, Recon cannot recover upon a theory of quantum meruit without regard to the terms and conditions of that contract. "Without in some manner removing the express contract from the picture in the normal fashion (rescission, abandonment, etc.) it is not possible to ignore it and proceed in *quantum meruit*" *(La Rose v Backer,* 11 AD2d 314, 320, *amended* 11 AD2d 969, *affd* 11 NY2d 760; *see also, Abinet v Mediavilla,* 5 AD2d 679). For all the foregoing reasons, the plaintiff Recon failed to prove any entitlement to damages under the sole theory it pleaded. Unlike Chrysler, Recon never sought to amend its pleadings. Accordingly, the complaint should be dismissed.

Turning to the merits of Chrysler's counterclaims, we find that the trial court abused its discretion in refusing to permit Chrysler to amend its pleadings to conform to the proof. The amendment sought by Chrysler would simply have allowed the pleadings to accurately reflect the actual basis of Chrysler's counterclaims, i.e., the existence of an implied-in-fact agreement between the parties making the servicing of nonre-

creational as well as recreational vehicles subject to the parties' written contracts. As we noted above, it is clear from the evidence adduced at trial, and it was conceded at oral argument, that the parties had, over a long period of time, done business in accordance with the terms of Chrysler's manual. Rather than contest the issue of whether Chrysler accurately determined that Recon had submitted $727,851 in false or unsubstantiated claims, as alleged in Chrysler's counterclaims, Recon has taken the position that Chrysler's counterclaims, as pleaded, refer only to work done on recreational vehicles, which represents a tiny fraction of the work done by Recon for Chrysler. In short, Recon hopes to prevail in this litigation not on the merits, but by exploiting what is perceived as a defect in Chrysler's pleadings. The injustice which would result if Recon would succeed with this tactic is manifest.

Motions to amend the pleadings should be granted in the absence of prejudice during, or even after trial (CPLR 3025 [c]; *Murray v City of New York*, 43 NY2d 400, 404-405, *rearg dismissed* 45 NY2d 966; *Dittmar Explosives v A.E. Ottaviano, Inc.*, 20 NY2d 498, 502). It is absolutely clear from all the circumstances revealed in the record on appeal that the plaintiff would not have been prejudiced by the amendment, since it obviously had notice of the true import of Chrysler's counterclaims. Although Chrysler's counterclaims specify that the parties' 1972 written agreement refers to recreational vehicles, it is absolutely clear that the very size of the damage award requested in those counterclaims (a total of $727,851) provided notice to Recon that Chrysler's claim was based on fraudulent claims relating to nonrecreational vehicles as well as recreational ones. Similarly, Chrysler should also be granted leave to amend its counterclaims so as to assert the additional claims it may have based on transactions which were proved at this trial, but not pleaded, such as the delivery of any additional automotive parts which remain unpaid for, and the payment made on Recon's behalf to Recon's landlord. Such claims should be included with the original counterclaims, which are hereby severed from the plaintiff's action, and will be deemed a complaint.

Recon argues that Chrysler failed to make a motion to amend its counterclaims prior to trial in a deliberate effort to retain the advantage resulting from its having obtained a default judgment with respect to the issues of liability raised in those counterclaims. Whether this is so is impossible to discern from the evidence in the record: it is just as easy to

infer that Chrysler failed to perceive any defect in its counterclaims at all since it appears that any defect in the pleading of the counterclaims was technical to the point of triviality. However, at an inquest, the court may not permit amendments of the pleadings which would broaden the scope of the inquest and increase the amount of damages provable by the plaintiff (see, CPLR 3215 [b]; Gluck v Allen Mfg. Co., 53 AD2d 584, 585; Frank P. McNally, Inc. v Ontario Frgt. Lines Corp., 29 AD2d 678). Since the amendment of the counterclaims would arguably expand their scope, we hold that Recon should be relieved of the consequences of its default. Therefore, upon remittal, Recon should be allowed to answer Chrysler's claims, and litigate them both as to liability and damages. Although Chrysler has obtained an order granting leave to enter a default judgment with respect to its original counterclaims, that order should operate to preclude Recon from contesting liability only as to the matters specifically set forth in Chrysler's original counterclaims, i.e., its liability with respect to fraudulent or unsupportable claims submitted with respect to Dodge recreational vehicles.

Accordingly, the judgment is reversed, the plaintiff's complaint is dismissed, and a new trial is granted with respect to the defendant on its counterclaims, which may be amended in accordance herewith. Mangano, J. P., Thompson, Brown and Eiber, JJ., concur. [See, 129 Misc 2d 1087.]