### In re MACROSE INDUSTRIES CORP., Debtor.

**Douglas PARTRICK, Plaintiff–Appellant,**

**v.**

**MACROSE INDUSTRIES CORP., and Kane, Kessler, Proujansky, Tullman, Preiss & Nurnberg, P.C., Defendants,**

**Midlantic National Bank, Defendant– Intervenor–Appellee.**

Bankruptcy No. 892–80814–478.

No. 93 CV 1886.

United States District Court, E.D. New York.

Sept. 22, 1995.

Certilman Balin Adler & Hyman (Michael D. Brofman, Harold Somer, of counsel), East Meadow, NY, for appellant Douglas Partrick.

Ober, Kaler, Grimes & Shriver (Aaron R. Cahn, Andrew I. Silfen, Gordon Hwang, of counsel), New York City, for appellee Midlantic Nat. Bank.

Bruce H. Willner, Great Neck, NY, for debtor-defendant Macrose Industries Corp.

Kane, Kessler, Proujansky, Tullman, Preiss & Nurnberg, P.C., New York City, pro se.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

The plaintiff-appellant, Douglas Partrick ("appellant" or "Partrick"), in this adversary proceeding, appeals from several decisions of Bankruptcy Judge Dorothy Eisenberg, granting the motions of the Defendant–Intervenor, Midlantic National Bank ("Midlantic"), to intervene and for summary judgment in its favor, and denying Partrick's motion to amend or alter the order granting Midlantic summary judgment.

This adversary proceeding arose out of a contract to purchase real property (the "Contract" or "Agreement") between the appellant as purchaser and debtor Macrose Industries Corporation ("Macrose") as seller. The Contract required that the purchaser, Partrick, pay $1,850,000 for certain real property owned by Macrose. The sum of $185,000 as a down payment was paid by Partrick. The down payment was to be placed in escrow with the defendants Kane, Kessler, Proujansky, Tullman, Preiss & Nurnberg, P.C., ("Kane, Kessler") upon execution of the agreement. The Contract also contains pro-

visions providing for cancellation of the Contract by either party and a return of the down payment. Almost one year after the Contract was entered into, and after Macrose filed for bankruptcy, Partrick attempted to cancel the Agreement under the terms of this provision. Midlantic intervened as a secured creditor holding a mortgage on the real property and moved for summary judgment in its favor to have the $185,000 down payment awarded to the bankrupt estate. Midlantic argued that Partrick breached the Contract by improperly attempting to cancel and avoid his responsibility to complete the purchase. The Bankruptcy Court granted Midlantic's motion and held that the down payment should not be returned to Partrick and did belong to the bankrupt estate. Thereafter, the Court denied Partrick's motion to amend or alter the summary judgment order, and this appeal followed.

*Background*

On May 30, 1991, Partrick entered into the Contract with Macrose to purchase certain real property located at 5600 Sunrise Highway in Massapequa, New York. The Contract provides that the purchase price was $1,850,000, with the $185,000 down payment to be placed in escrow with Kane, Kessler upon the execution of the Agreement. The final sale however, was contingent upon Partrick obtaining all necessary municipal approvals at his own cost and expense. These municipal approvals would permit the appellant to demolish the presently existing structure and replace it with a 17,800 square foot retail building. Subparagraphs 58(a), (b) and (c) of the Agreement set forth the time table under which Partrick was required to obtain the necessary building permits and also provide the terms for cancellation of the Agreement. Specifically, subparagraph 58(a) provides,

> Purchaser [Partrick] herewith represents to the Seller that in acquiring title to the Premises [5600 Sunrise Highway], it intends to demolish the existing structure and erect a new one-story building containing approximately 17,800 square feet of retail space, substantially in accordance with the plans annexed hereto as Exhibit 2.... Upon receipt of an executed copy

of this Contract of Sale, Purchaser shall file or caused to be filed an Application within thirty (30) days from such receipt, Building Permits in compliance with zoning ordinances now in effect and with accompanying supporting documents necessary for the construction of such new building and pursue such Application with due diligence in an effort for such Building Permits to be issued with the least delay, whereupon the closing shall take place within thirty (30) days thereafter. The Seller [Macrose], at no cost or expense to it, agrees to join in said applications. The Purchaser shall pay all filing, bonding, engineering, permit fees and such other fees and charges as may be necessary to secure the requisite approvals.

Subparagraphs 58(b) and 58(c) further elaborate on this time table, as follows,

(b) Purchaser shall be given a period of six (6) months from the date Purchaser receives an executed copy of this Contract to secure the approvals set forth above. In the event all such approvals are not obtained within the six (6) month period, Seller, ... agrees to extend the time to secure said approvals for an additional three (3) month period from the expiration of the initial six (6) month period. In the event all such approvals are not obtained within the additional three (3) month period, ... Seller ... agrees to extend the time to secure said approvals for a further three (3) month period from the expiration of the initial additional three (3) month period for a total of twelve (12) months. *In the event that the Purchaser cannot secure the requested approvals within the above twelve (12) month time limit, either party may elect to cancel this Contract, except as hereinafter provided.* If at the expiration of such twelve (12) month time limit the respective Boards or Administrative Agencies have not acted on said applications, and: (i) the requisite applications are completed and have been filed; then, and in such event, upon the written request of Purchaser within seven (7) days of the expiration of such twelve (12) month time limit, the Seller agrees to extend the time for the Purchaser to secure said approvals until such time as the respective

Boards or Administrative Agencies of the Town [of Oyster Bay] either approve or disapprove such applications, provided, in consideration for Seller extending such time limit, the Purchaser ... advances to seller each month one-twelfth (½2) of the then prevailing annual real estate taxes for the Premises; such advances to be retained by the Seller whether or not the closing takes place.

(c) The election to cancel this Contract must be made by sending written notice to this effect by certified mail, return receipt requested, not later than thirty (30) days subsequent: (i) to receipt of notice of the disapprovals; (ii) [to t]he expiration of 18 months from the date hereof and upon a refund of the Downpayment to the purchaser, the liability of the parties to each other shall cease and terminate. Notwithstanding the, above, nothing herein contained shall prohibit the Purchaser from waiving the condition contained in this paragraph and taking title to the Premises with said conditions being waived. (emphasis supplied).

Paragraph 23 of the Agreement further provides that "[t]his contract may not be changed or cancelled except in writing."

In June 1991, immediately after the Agreement was executed, Partrick began seeking the required municipal approvals to build its one floor 17,800 square foot retail building. However, before Partrick could apply for the building permits contemplated under paragraph 58(a), the parties discovered that a Special Use Permit was required because Partrick's intended use was not permitted under the present zoning ordinances. Acquisition of the Special Use Permit would require an additional period of nine months to a year. To obtain the Special Use Permit, Partrick retained special counsel, the law firm of Marino, Bernstein & LaMarca, and a team of environmental experts and engineers to supply the necessary documentation. The petition for the Special Use Permit with the supporting documentation was filed with the Town of Oyster Bay on September 5, 1991. According to the complaint, neither party to the Agreement anticipated the need to obtain

the Special Use Permit, and the failure to foresee this problem constituted a mutual mistake sufficient to support a recision of the Contract.

When Partrick was unable to obtain the required building permits within six months, as a result of the time it had taken to acquire the Special Use Permit, he invoked the first three month extension allotted in paragraph 58(b). This extension gave Partrick until February 29, 1992 to obtain the required municipal approvals. When Partrick was again unable to secure the approvals by this second deadline, he invoked the second three month extension giving him until May 31, 1992, a total period of 12 months after the execution of the Contract.

In the interim however, on February 13, 1992, an involuntary bankruptcy petition was filed against Macrose under Chapter 7 of the Bankruptcy Code. The Bankruptcy Court subsequently converted the case to a voluntary Chapter 11 bankruptcy on March 2, 1993.

On May 12, 1992, the Town Board of Oyster Bay finally granted Partrick's Special Use Permit under the Town's Resolution 373–92. However, the Special Permit was contingent upon Partrick's submission of a site plan also subject to approval by the Town Board.

On June 2, 1992, one year and three days after the Agreement was executed, Partrick attempted to cancel the Contract under the provisions of paragraph 58(b) since he was unable to acquire all of the necessary municipal approvals as provided for in the Contract. Macrose responded by moving the Bankruptcy Court for leave to have the $185,000 being held in escrow delivered to the bankrupt estate claiming that Partrick's attempted cancellation violated the Contract's terms, and constituted a breach of the Contract. The Bankruptcy Court denied the motion on procedural grounds. Partrick then commenced an adversary proceeding to recover the down payment under the terms of the Contract.

*The Proceedings in the Bankruptcy Court*

Partrick initiated the adversary proceeding against Macrose on September 14, 1992 based on the pre-petition Contract of Sale discussed above, seeking, among other remedies, a recision, or alternatively a cancellation of the Contract, and the return of the $185,-000 down payment.

(i) *Midlantic's Motion to Intervene*

On October 20, 1992, Midlantic filed a motion to intervene in this matter under Bankruptcy Rules 7024(a) and 2018. Midlantic reasoned that as a secured creditor and a holder of the mortgage on the Macrose property and other related liens, it had sufficient interest in the outcome of the adversary proceeding to warrant its intervention. Moreover, Midlantic asserted that because of the adversarial relationship between Macrose as the mortgagor of the real property, and Midlantic as the secured creditor, Macrose may not be inclined to adequately represent Midlantic's interests in the adversary proceeding.

Partrick responded that Midlantic's interest in the down payment is entirely contingent upon Macrose prevailing in the adversary proceeding. Therefore, according to Partrick, the Court should presume that Macrose would adequately represent Midlantic's position and since Midlantic failed to present sufficient evidence to overcome this presumption, it should not be allowed to intervene.

The Bankruptcy Court granted Midlantic's motion to intervene in a decision from the bench on November 5, 1992. In so holding, the Court reasoned that Midlantic, as a secured creditor, has "a primary interest in its collateral," including the proceeds of the sale of 5600 Sunrise Highway sufficient to warrant intervention. Hearing Transcript ("Tr.") Nov. 5, 1992, Tr. 5. Accordingly, the Court granted Midlantic's motion to intervene for the limited purpose of moving for summary judgment in its favor awarding the $185,000 down payment to the bankrupt estate.

(ii) *Midlantic's Motion for Summary Judgment*

On November 20, 1992, Midlantic filed its motion for summary judgment pursuant to Fed.R.Civ.P. 56. Midlantic's argument had two prongs. *First,* if Partrick had any right to rescind the Contract as a result of the parties' mutual mistake regarding the re-

quirement of the Special Use Permit, the plaintiff waived that right by not exercising it in a timely fashion. *Second,* the necessity of the Special Use Permit, which required an additional eleven and one-half months to obtain, operated to modify the Agreement by extending the original thirty day period for Partrick to apply for building permits until after the Special Use Permit was secured. Therefore, under this theory, the one year period to obtain the building permits referenced in paragraph 58 of the Agreement would not expire until May 30, 1993. Accordingly, when Partrick attempted to terminate the Agreement on June 2, 1992, it was premature and constituted a breach of the Contract.

Partrick responded to Midlantic's first argument asserting that there is a question of material fact as to whether he waived his right to recision by seeking the Special Use Permit. The appellant argued that whether a waiver has occurred depends on whether the waiving party has failed to exercise his rights for more than a reasonable period of time. According to Partrick, what constitutes a "reasonable" period varies with the circumstances of each case and therefore constitutes a material factual issue precluding summary judgment.

In addition, Partrick asserted that Midlantic's modification argument was misplaced because the Contract contains a clause precluding oral modifications, which, under New York law, precludes any contract modification based solely on the parties' conduct. Partrick argued that the mutual mistake regarding the requirement of the Special Use Permit creates a material issue of fact as to whether Partrick is entitled to rescind the contract. In addition, reading the Contract provisions literally, any non-written modification that may have occurred is invalid under New York law. In either event, Partrick contends that he validly cancelled the Contract in accordance with its express original terms.

On February 16, 1993, the Bankruptcy Court, ruling from the bench, agreed with Midlantic, and held that the requirement for a Special Use Permit was not contemplated by the parties to the Contract and as such constituted a mutual mistake. The Court further held that Partrick's acquisition of the necessary information and documentation to obtain the Special Use Permit constituted a clear indication of Partrick's intent to modify the parties' Contract. Therefore, the Court held that the original timetable contained in the Contract was no longer viable, and Partrick's attempt to cancel the Contract within the original time frame constituted a breach.

In so holding the Bankruptcy Court recognized that under New York law, even where a contract expressly provides that it may only be modified in writing, an oral modification is enforceable where "subsequent action taken by one of the parties is not compatible with the written agreement, and . . . the application of either the partial performance or equitable estoppel theory prevents repudiation of the now partially executed modification," citing *Rose v. Spa Associates,* 42 N.Y.2d 338, 343–4, 397 N.Y.S.2d 922, 926, 366 N.E.2d 1279 (1977). Under this rule, a written modification is not required despite the express terms of the Contract, where the party seeking to prove an estoppel proves that it was induced to take a significant course of action in reliance on the oral modifications made by the nonmoving party.

Applying these rules to the motion for summary judgment before the Court, Judge Eisenberg held that Macrose,

> relied upon [Partrick's] conduct of acquiring the special use permit and . . . mutually agreed to delay . . . the termination dates [under the Agreement] in order to permit Plaintiff to obtain whatever prerequisites were necessary in order for the Plaintiff to apply for the building permits. This appears . . . to be sufficient evidence of an agreed to modification to the Contract of Sale. *Id.* at 10.

According to the Bankruptcy Court, Macrose relied on this modification when it opted not to enforce the thirty day time limit to apply for the building permits, contained in paragraph 58(a), and it refrained from selling the realty to another purchaser. Therefore, the Bankruptcy Court concluded that while the doctrine of partial performance is not available, as it would require a more detailed factual analysis to determine whether the

performance was unequivocally referable to the modification, the doctrine of equitable estoppel is properly invoked.

### (iii) *Partrick's Motion To Amend the Bankruptcy Court's Summary Judgment Order*

In his motion to amend or alter the Bankruptcy Court's Order granting summary judgment to Midlantic, filed pursuant to Fed. R.Civ.P. 59(e) and Bankruptcy Rule 9023, Partrick argued that the Bankruptcy Court erred in granting Midlantic summary judgment on four grounds: (1) the Court erroneously found that necessary site plan approvals as required by the contingent grant of the Special Use Permit, were obtained before the Contract of Sale was terminated; (2) the Court incorrectly held that the termination of the Contract was untimely; (3) the Court erroneously stated that Partrick had cross moved for summary judgment when Partrick has always maintained that triable issues of fact exist which preclude summary judgment; and (4) the Court erred when it concluded that the Contract was modified and that Partrick was equitably estopped from cancelling the Contract.

Midlantic responded by asserting that Partrick's motion was nothing more than a rehashing of the arguments offered in opposition to the original summary judgment motion. According to Midlantic, to the extent that Partrick's motion argues that erroneous conclusions of fact were made by the Bankruptcy Court, such conclusions were immaterial and had no impact on the Bankruptcy Court's contract modification-equitable estoppel analysis. Also, whether Partrick had actually obtained the requisite site plan approvals, and whether Partrick had cross moved for summary judgment are irrelevant to the Court's original decision. Moreover, Partrick's argument that its termination was timely, and that the Bankruptcy Court had incorrectly found that the Contract was modified, simply repeated earlier arguments without adding newly discovered facts or recent developments in the law, and did not warrant reconsideration.

On April 22, 1993, the Bankruptcy Court denied Partrick's motion to amend or alter the summary judgment order. In reaching its conclusion, the Court reasoned that assuming the errors asserted in Partrick's moving papers were accurate, they do not affect the Court's underlying analysis. When Partrick went forward and obtained the Special Use Permit, and thereby breached the Contract by missing the initial thirty day deadline to apply for the necessary building permits, and Macrose refrained from exercising its rights to either hold Partrick in breach or resell the property, in reliance on Partrick's demonstrated intent to stay with the Contract, Partrick was equitably estopped from arguing that the Contract was not modified so as to prevent cancellation on June 2, 1992. In so holding the Court commented that had Partrick taken the additional nine months to obtain the Special Use Permit, and then continued to seek the requisite building permits, Macrose would have been estopped from attempting to cancel the Contract.

### *Discussion*

#### (i) *Issues Presented On Appeal*

On May 27, 1993, Partrick filed its notice of appeal from the Bankruptcy Court's Order denying its Motion to amend or alter the summary judgment order. However, while this Motion was limited to the four issues discussed above, Partrick's appeal now presents ten issues for review, several of which were never raised in the Bankruptcy Court proceedings. In an effort to consolidate the Court's analysis, the issues on appeal are grouped into three subtopics: (1) whether the Bankruptcy Court properly allowed Midlantic to intervene in this case; (2) whether the Bankruptcy Court misapplied New York contract law; and (3) whether the Bankruptcy Court failed to properly apply the Bankruptcy Code.

#### (ii) *The Standards of Review*

Under Fed.R.Bank.P. 8013, findings of fact made by the Bankruptcy Court are reviewed under a "clearly erroneous" standard, while conclusions of law are reviewed *de novo. See In re Momentum Mfg. Corp.*, 25 F.3d 1132 (2d Cir.1994); *In re PCH Assocs.*, 949 F.2d 585, 597 (2d Cir.1991); *In re Sundial Asphalt Co.*, 147 B.R. 72, 79 (E.D.N.Y.1992). The issues of waiver and estoppel, where the underlying facts are

agreed upon, are questions of law for the Court to review *de novo.* *See, e.g., In re Eastern Systems, Inc.,* 105 B.R. 219, 227 (Bankr.S.D.N.Y.1989) (addressing waiver as a question of law).

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.,* 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c) (summary judgment standard). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Twin Laboratories, Inc. v. Weider Health & Fitness,* 900 F.2d 566, 568 (2d Cir.1990); *Liscio v. Warren,* 901 F.2d 274, 276 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

According to the Second Circuit "[s]ummary judgment is a tool to winnow out from the trial calendar those cases whose facts predestine them to result in a directed verdict." *United National Ins. Co. v. The Tunnel, Inc.,* 988 F.2d 351, 355 (2d Cir.1993). Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *See Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir. 1990) (quoting Fed.R.Civ.P. 56(e)); *see also National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510; *see Converse v. General Motors Corp.,* 893 F.2d 513, 514 (2d Cir.1990).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *See Western World,* 922 F.2d at 121. If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See United National,* 988 F.2d at 354–55; *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). Finally, the Court is charged with the function of "issue finding", not "issue resolution". *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership,* 912 F.2d 23, 27 (2d Cir.1990). The issues on appeal will be reviewed in conformity with these standards.

(iii) *Did the Bankruptcy Court Err in Allowing Midlantic to Intervene?*

Partrick's final argument is that the Bankruptcy Court erred in allowing Midlantic to intervene in order to make its summary judgment motion. Nov. 22, 1992, Tr. 20–21. The Court disagrees. Intervention in adversary proceedings in the Bankruptcy Court is governed by Fed.R.Bankr.P. 7024 which applies Fed.R.Civ.P. 24. Rule 24(a)(2) provides that an entity shall be permitted to intervene in an action,

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 24(a)(2) should be interpreted practically to allow courts to reach pragmatic solutions. *United States v. Hooker Chemicals & Plastics Corp.,* 749 F.2d 968, 983 (2d Cir.1984). As in this case, a deposit retained as damages resulting from a failed real estate contract may give the mortgagee a security interest in the deposit. *See Old Stone Bank v. Tycon I Building Limited Partnership,* 946 F.2d 271, 272–75 (4th Cir. 1991); *In re Aldersgate Foundation, Inc.,* 878 F.2d 1326 (11th Cir.1989).

Midlantic's security interest in the downpayment, as well as in Macrose's other assets, affords Midlantic a sufficient interest to warrant intervention. Moreover, if Midlantic was not permitted to litigate this interest, it could have been deprived of an opportunity

to be heard on this issue had the Bankruptcy Court determined that Partrick was entitled to the return of his down payment. While it would appear at first blush that Macrose and Midlantic share a common interest opposing Partrick, the Bankruptcy Court found that as a practical matter, Macrose "will have very little residual, if any, from these funds," Nov. 22, 1992, Tr. 5, and as a result, there is some rational concern as to Macrose's desire or ability to contest Partrick's claim. Accordingly, the Court holds that the Bankruptcy Court properly permitted Midlantic to intervene in this matter under Rule 24(a)(2).

#### (iv) *Did the Bankruptcy Court properly interpret New York contract law?*

■ "A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule, be enforced according to its terms." *W.W.W. Assocs., Inc. v. Giancontieri,* 77 N.Y.2d 157, 163, 565 N.Y.S.2d 440, 443, 566 N.E.2d 639 (1990); *see also Barbier v. Shearson Lehman Hutton, Inc.,* 752 F.Supp. 151, 156 (S.D.N.Y.1990), *as modified,* 948 F.2d 117 (2d Cir.1991) *citing, Curry Road Ltd. v. K Mart Corp.,* 893 F.2d 509, 511 (2d Cir. 1990). The purpose of the rule is to ensure stability and safeguard against fraudulent claims, perjury, and infirmity of memory. *W.W.W. Assocs.,* 77 N.Y.2d at 163, 565 N.Y.S.2d at 443, 566 N.E.2d 639. "Such considerations are all the more compelling in the context of real property transactions where commercial certainty is paramount." *Id.* Moreover, in adjudicating the rights of the parties to a contract, courts may not fashion a new contract under the guise of contract construction. *Slatt v. Slatt,* 64 N.Y.2d 966, 967, 488 N.Y.S.2d 645, 646, 477 N.E.2d 1099 (1985). Indeed, the Second Circuit has recognized that "[i]f the terms of [a] contract[ ] are clear and unambiguous, ... it is unnecessary to resort to strained theories of ... estoppel or general principles of equity and determine the proper respective positions of the parties involved." *In re Credit Industrial Corp.,* 366 F.2d 402, 407 (2d Cir. 1966).

■ Paragraph 58 of the Contract clearly and unambiguously sets forth both a schedule under which Partrick was to obtain the required building permits, and a right by either party to cancel the Contract at the end of twelve months from the date of execution. Therefore, absent an enforceable modification of these provisions, this right to cancel remains effective as written.

■ Midlantic argued, and the Bankruptcy Court agreed, that an enforceable modification of the Contract occurred as a result of the parties mutual mistake in executing the Contract without providing for the Special Use Permit. "A mutual mistake occurs when both parties to a bilateral transaction share the same erroneous belief and their acts do not in fact accomplish their mutual intent." *Healy v. Rich Prods. Corp.,* 981 F.2d 68, 73 (2d Cir.1992) (internal quotations omitted). Establishing a mutual mistake entitles the parties to rescind the contract. *See Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 46 (2d Cir.1991).

At the point the parties discovered that the Special Use Permit was needed for Partrick to construct his new retail space, there was a mutual mistake, entitling the parties to rescind the Contract. However, neither party exercised that right, and as a result the right was waived. *See id.* ("An action for recision must be initiated without unreasonable delay"); *Hadden v. Consolidated Edison Co.,* 45 N.Y.2d 466, 469, 410 N.Y.S.2d 274, 275–76, 382 N.E.2d 1136 (1978). For a claim of recision based on mutual mistake to be viable in this case, it should have been made at the time the mistake was discovered, not a year later when a different contractual right was at issue. Accordingly, the parties' mutual mistake regarding the Special Use Permit did not necessarily give rise to a modification of the Contract's cancellation provisions.

■ Although Midlantic claims that there was a valid oral modification of the Contract, Midlantic never actually defines the modification or refers to it directly. Rather, Midlantic reasons that,

the parties did not choose to express any of this [the modification] in writing. Nonetheless, the conversations between the par-

ties to which [Partrick] has himself testified are consistent with the theory of modification by conduct, and despite defendant's comments to the contrary, *are unequivocally referable to the parties' agreement to extend the time limits, for their mutual benefit.* Appellee's Mem. of Law at 8–9 (emphasis supplied).

■ The Court is unpersuaded by the appellee's logic. While it is true that as a general rule, parties may modify a contract by conduct, *see Chase v. Skoy,* 146 A.D.2d 563, 536 N.Y.S.2d 512 (2d Dept.1989); *Recon Car Corp. v. Chrysler Corp.,* 130 A.D.2d 725, 515 N.Y.S.2d 829 (2d Dept.), *appeal denied,* 70 N.Y.2d 612, 523 N.Y.S.2d 496, 518 N.E.2d 7 (1987), this rule does not relieve Midlantic of the burden, as the summary judgment movant, of demonstrating that parties did in fact agree to a modification and the terms of that modification. *See Southern Federal S & L v. 21–26 East 105th Street Assoc.,* 145 B.R. 375 (S.D.N.Y.1991), *aff'd,* 978 F.2d 706 (2d Cir.1992). Moreover, if the moving party claims that the modification constituting the abandonment of contractual rights is the result of the parties conduct, the conduct must be "mutual, positive, unequivocal, and inconsistent with the intent to be bound." *See Rosiny v. Schmidt,* 185 A.D.2d 727, 587 N.Y.S.2d 929, 932 (1st Dept.1992).

While Midlantic makes a complex argument in an effort to persuade the Court that a modification of the Contract occurred as a result of the parties mutual mistake, the appellee never explains what the oral modification is. Midlantic never offered any evidence that the parties agreed to a modification in the nature of an extension of the right to cancel after twelve months. Therefore, the Court concludes that while the necessity of the Special Use Permit may have led to a modification of the Contract, Midlantic has not demonstrated that the modification was "mutual, positive and unequivocal." Further, and significantly, Midlantic failed to prove that the oral modification was unequivocally referable to a mutual extension of the twelve month cancellation provision set forth in paragraph 58(b). Accordingly, the Bankruptcy Court erred when it concluded that Midlantic was entitled to summary judgment

in its favor, because material triable issues of fact exist as to whether there was an enforceable oral modification extending the twelve month cancellation provision afforded to both parties by the express terms of the Contract.

■ Midlantic argues that even though paragraph 23 of the Contract provides that the Agreement can only be modified in writing, the oral modification discussed above is nevertheless valid. Contract provisions proscribing non-written modifications are enforceable under New York Gen.Oblig.Law § 15–301(1). Section 15–301(1) provides,

A written agreement ... which contains a provision to the effect that it cannot be changed orally, cannot be changed by executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement is sought. ...

This statute arises out of a policy consideration: that a formal writing will act to insure the validity and genuineness of the contractual modification. *See DFI Communications, Inc. v. Greenberg,* 41 N.Y.2d 602, 394 N.Y.S.2d 586, 363 N.E.2d 312 (3d Dept.1977).

■ However, in the seminal case of *Rose v. Spa Realty Assoc.,* 42 N.Y.2d 338, 345, 397 N.Y.S.2d 922, 927, 366 N.E.2d 1279 (1977), the New York Court of Appeals set forth two exceptions to this rule. *First,* where there is partial performance of the oral modification sought to be enforced, and the partial performance is unequivocally referable to the oral modification, the writing requirement of section 15–301(1) may be avoided. *Second,* where one party induces the other to rely upon the oral modification, that first party may be equitably estopped from enforcing the writing requirement of section 15–301(1). Again, the conduct relied upon must be unequivocally referable to the oral modification and inconsistent with the underlying agreement. *Id.; see also Towers Charter & Marine Corps. v. Cadillac Ins. Co.,* 894 F.2d 516, 522 (2d Cir.1990) quoting *Rose v. Spa Realty Assocs.,* 42 N.Y.2d at 343, 397 N.Y.S.2d at 926, 366 N.E.2d 1279 (1977); *U.S. West Financial Servs., Inc. v. Marine Midland Realty Credit Corp.,* 810 F.Supp.

1393, 1405 (S.D.N.Y.1993); *Cliffs Management Corp. v. Great Eastern Management Corp.*, 85 A.D.2d 584, 445 N.Y.S.2d 460, 462 (1st Dept.1981), *appeal denied*, 56 N.Y.2d 643, 450 N.Y.S.2d 787, 436 N.E.2d 194 (1982).

■ Midlantic contends that the oral modification that it says did occur is enforceable under both *Rose* exceptions for partial performance and equitable estoppel. The Court disagrees. Even assuming that Midlantic had adequately demonstrated that the requirement of the Special Use Permit mutually, positively and unequivocally created an oral modification extending the right to cancel the Contract, Midlantic has not established that the appellant's partial performance, *i.e.*, acquisition of the Special Use Permit, was unequivocally referable to that particular modification. Indeed, it is just as likely that Partrick's herculean efforts to acquire the Special Use Permit may be traced to the "due diligence" requirement expressly contained in paragraph 58 as it is referable to some implied modification and extension of the right to cancel. Accordingly, the Court finds that there is a material triable issue of fact as to the circumstances surrounding Partrick's acquisition of the Special Use Permit, and whether such conduct is unequivocally referable to an extension of the twelve month cancellation provision.

■ In addition, the Court finds that the second exception discussed in *Rose*, based on equitable estoppel, is inapplicable. The Bankruptcy Court held that Partrick was equitably estopped from refuting the oral modification of the Agreement, reasoning that Macrose justifiably relied to its detriment on Partrick's obtaining the Special Use Permit.

■ Equitable estoppel is a rarely granted remedy that should be "applied with great caution when dealing with realty." *In re Yachthaven Restaurant, Inc.*, 103 B.R. 68, 77 (Bankr.E.D.N.Y.1989) *citing Huggins v. Castle Estates, Inc.*, 36 N.Y.2d 427, 369 N.Y.S.2d 80, 330 N.E.2d 48 (1975). Under *Rose*, application of the doctrine of equitable estoppel requires a showing of substantial detrimental reliance on the non-moving party's representations regarding the oral modification.

However, a review of the record reveals that Midlantic has not established that Macrose relied to its detriment on Partrick's conduct in seeking to obtain the Special Use Permit. The Bankruptcy Court found that Macrose knew that the Special Use Permit could not be approved in the time set forth in the Agreement and, in effect, granted Partrick the additional time necessary to obtain the permit. In so doing, the Court held that Macrose detrimentally relied by not holding Partrick in breach after the parties discovered that seeking the Special Use Permit would cause Partrick to fail to comply with the original time table contained in the Contract, and by not reselling the property to another buyer at that time.

Reviewing the elements necessary to establish a claim for equitable estoppel however, demonstrates that Midlantic's claim is deficient. When Partrick and Macrose both discovered the need for the Special Use Permit, that constituted a mutual mistake and either party had a right to rescind the contract. Neither elected to do so. Rather, both parties continued to perform as best they could under the circumstances. Indeed, Judge Eisenberg recognized that Partrick was acting diligently when he sought the Special Use Permit.

At that time, Macrose did not forego any right to resell the property. Under the terms of the Agreement, if Partrick was unable to obtain the necessary building permits within six months after signing the Agreement, he had a contractual right to obtain two additional three month extensions. According to paragraph 58(b) of the Contract, the "Seller, upon written request of the Purchaser … *agrees* to extend the time to secure [the necessary building] approvals." (emphasis added). Contrary to the Bankruptcy Court's conclusion, *see* Apr. 22, 1993 Tr. 18–19, Macrose had no discretionary right to reject Partrick's request for extensions to seek the required building permits for a period of twelve months. By the terms of the Contract, Macrose was obligated to provide these extensions, and as a result, it was prohibited from reselling the property

during that time. Therefore, the Bankruptcy Court's conclusion that Macrose relied to its detriment on Partrick's representation by not selling the property to another buyer during this one year period, is clearly erroneous. Accordingly, the Court finds that there is a material triable issue of fact as to whether Midlantic can demonstrate that it relied to its detriment on the alleged oral modification.

(v) *Did the Bankruptcy Court fail to properly apply the relevant provision of the Bankruptcy Code?*

■■■ Partrick advances several arguments for the first time on appeal based on the Bankruptcy Court's failure to apply the Bankruptcy Code *sua sponte.* In particular, the appellant argues that the attempt to extend the period in which to perform the contract violated the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362. He also asserts that the Contract was automatically rejected pursuant to 11 U.S.C. § 365.

■■■■ As these issues were not raised in the Bankruptcy Court, they will not be considered on this appeal. Although an appellate court retains discretion to decide questions not initially raised in the proceedings below, *In re Firstcent Shopping Ctr.,* 141 B.R. 546, 551 n. 8 (S.D.N.Y.1992); *In re Hilsen,* 119 B.R. 435, 439 (S.D.N.Y.1990), the general rule is that an appellate court will not consider an issue not passed upon below unless failure to entertain the issue will result in a manifest injustice. *In re Lionel Corp.,* 29 F.3d 88, 92 (2d Cir.1994), *citing, Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976). Moreover, a manifest injustice will not occur when the moving party has other means by which it can obtain a successful result. *Lionel,* 29 F.3d at 92.

> [Partrick] cannot excuse its failure to use a potential weapon in its arsenal simply by asking for a second chance to wage its battle. A contrary rule would unfairly prejudice [his] adversaries and contravene the purpose of having [appellate] courts sit as a forum of appellate review ... [especially] where the appellees have raised a substantial response. *Id.*

Partrick's arguments based on the Bankruptcy Code, although available to him at the hearing in the Bankruptcy Court, were never brought to the attention of the Bankruptcy Judge and this Court finds that precluding these issues on appeal will not result in a manifest injustice. Accordingly, there is no reason for this Court to engage in an otherwise academic exercise by entertaining the appellant's newly raised arguments. Since this matter is being remanded for a hearing, Partrick may raise these issues in the Bankruptcy Court, if appropriate, and if not previously waived.

*Conclusion*

The decision of the Bankruptcy Court granting summary judgment to Defendant–Intervenor Midlantic is hereby reversed and the case is remanded to the Bankruptcy Court to decide the following issues of fact:

1. Was there an agreement to modify the written Contract of Sale, either by actual oral agreement, or by the conduct of the parties, so as to extend the twelve month cancellation period;

2. If so, was the partial performance by Partrick in obtaining the Special Use Permit unequivocally referable to the above modification, namely to extend the cancellation period;

3. Did Partrick's acts, with regard to obtaining the Special Use Permit cause Macrose to substantially rely upon the oral modification of the Contract, so as to estop Partrick from denying the oral modification.

Under this remand, the Bankruptcy Court is to engage in any other necessary hearings or proceedings consistent with this Decision and Order.