In re Joseph NEWMAN, Debtor.

Ira S. GREENE, as Trustee of Joseph Newman, Debtor, Plaintiff,

v.

Joseph NEWMAN, Andrew Charla, J. E. S. Equities, Inc., Susan Newman, Allan Newman and Nelstad Trucking & Contracting Corp., Defendants.

Bankruptcy No. 79 B 20051.
Adv. No. 80 ADV 2047.

United States Bankruptcy Court,
S. D. New York.

June 8, 1981.

Ira S. Greene, New York City, Trustee for plaintiff.

Solomon Abrahams, Hartsdale, N. Y., for defendants except Nelstad.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The trustee in bankruptcy in the above-captioned case moves for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, as adopted by Bankruptcy Rule 756, with respect to certain causes of action asserted in an adver-

sary proceeding to recover certain alleged fraudulent transfers proscribed by Code § 548 and §§ 273 and 273–a of the New York Debtor and Creditor Law. The trustee also seeks summary judgment dismissing defendants' four counterclaims.

An involuntary petition for relief under Chapter 7 of the Bankruptcy Code was filed against the debtor on November 24, 1979. The order for relief was entered on January 2, 1980.

The undisputed facts, admitted by the defendants in pleadings and in response to the trustee's Request for Admissions and as reflected in this court's order of September 26, 1980, entitled "Order Deeming Statements Admitted", are as follows:

1. Chrysler Credit Corp. (Chrysler) commenced an action against the debtor, Joseph Newman, and other parties, entitled *Chrysler Credit Corporation v. Fair-Way Chrysler Plymouth Inc., Joseph Newman, Elaine Newman, Joseph Spagnola and Constance Spagnola*, Index No. 78 Civ. 5802 in the United States District Court for the Southern District of New York in December, 1978.

2. The debt which Chrysler claimed was owed to it by the debtor and the other named defendants of approximately $86,000. resulted in a jury verdict in favor of Chrysler and against the debtor in the sum of $86,704, on September 11, 1979, which sum has not been paid.

3. On September 17, 1979, six days after the jury verdict against him, the debtor assigned promissory notes due him from New Rochelle Manufacturing Corp. to the defendant, Andrew Charla, his father-in-law. The payments due on the New Rochelle Manufacturing Corp. (NRM) notes, inclusive of interest, totalled approximately $97,000 on September 17, 1979. The notes represented the balance due the debtor from NRM for the purchase of the debtor's interest in NRM and for a noncompetition agreement executed by the debtor, as well as for a loan made by the debtor to NRM.

4. The defendant, Andrew Charla, paid his son-in-law, the debtor, $54,500 in cash on September 17, 1979, in exchange for the notes.

5. On September 19, 1979, Chrysler docketed its judgment against the debtor in the United States District Court for the Southern District of New York for $86,704. plus interest of $9,537.44, for a total of $96,241.44.

6. On September 28, 1979, a certificate of incorporation was filed with the Secretary of State for New York on behalf of J.E.S. Equities, Inc. The sole shareholders and officer of J.E.S. are the children of the debtor.

7. On or about November 15, 1979, the debtor transferred $40,000 in cash of the $54,500 he received from Andrew Charla to J.E.S. in exchange for a promissory note of $40,000, payable by J.E.S., on which there would be no payment of principal or interest until November 15, 1982. The note provided that the principal balance of $40,000 would be paid at the rate of $100 per month, commencing November 15, 1982. The interest would be paid at the rate of 7% per annum, also commencing November 15, 1982. This would result in a payout period of 36 years and 11 months with respect to the principal indebtedness.

8. On or about March 5, 1980, J.E.S. transferred $50,000 to the Nelstad Trucking & Contracting Corp. in exchange for a $50,000 promissory note due on June 15, 1981.

9. By order of this court dated September 25, 1980, the following items were deemed admitted by the defendants and are included in this court's findings:

"5. On the date that Joseph Newman transferred the promissory notes described in paragraph "12" of the complaint to Andrew Charla, (hereinafter referred to as the "transfer date"), the present saleable value of the debtor's assets remaining after the transfer was made totalled less than $80,000.00.

"6. On and after June 1, 1979 continuously through September 17, 1979, the debtor's total liabilities exceeded $80,000.00 if it is assumed that the debtor owed at least $80,000.00 to Chrysler on and after June 1, 1979 through September 17, 1979.

"7. On and after June 1, 1979 continuously through September 19, 1979, the debtor's total liabilities exceeded $100,-000.00 if it is assumed that the debtor owed at least $86,704.00 to Chrysler on and after June 1, 1979 through September 19, 1979.

"8. On and after June 1, 1979 continuously through September 17, 1979, the debtor's total liabilities exceeded $97,-000.00 if it is assumed that the debtor owed at least $80,000.00 to Chrysler on and after June 1, 1979 through September 17, 1979.

"9. On and after June 1, 1979 continuously through September 17, 1979, the debtor's total liabilities exceeded $103,-000.00 if it is assumed that the debtor owed at least $86,704.00 to Chrysler on and after June 1, 1979 through September 17, 1979.

"10. On and after September 19, 1979 and continuously through November 28, 1979, Joseph Newman's total liabilities exceeded $86,000.00

"11. The Chrysler action resulted in the docketing of judgment against Joseph Newman and in favor of Chrysler on September 19, 1979, in the amount of $86,704.00 plus interest at the rate of 6% per annum from October 31, 1977.

"12. The interest granted in the judgment described in paragraph "11" hereof totalled $9,537.44 which increased the amount of the judgment to $96,241.44.

"14. As of the present date, the judgment referred to in paragraph "11" hereof remains unsatisfied and unpaid.

"15. Joseph Newman transferred the promissory notes described in paragraph "12" of the Amended Complaint herein to Andrew Charla after June 1, 1979 and prior to October 1, 1979.

"16. On the date that Joseph Newman transferred the promissory notes described in paragraph "12" of the complaint herein to Andrew Charla, the present saleable value of Joseph Newman's assets remaining after the transfer was made totalled less than the amount that was required to pay Joseph Newman's proba-ble liability on his existing debts as they became absolute and matured if it is assumed that Joseph Newman's debts include the Chrysler debt referred to in paragraph "2" hereof in the amount of at least $86,704.00.

"17. The transfer of $40,000.00 by Joseph Newman to J.E.S. Equities Corp. ("J.E.S.") described in paragraph "22" of the Amended Complaint herein was made on November 15, 1979.

"18. On the date of the transfer of $40,000.00 by Joseph Newman to J.E.S. described in paragraph "22" of the Amended Complaint herein, the present saleable value of Joseph Newman's assets remaining after the transfer was made was less than $86,704.00.

"19. On the date of the transfer of $40,000.00 by Joseph Newman to J.E.S. described in paragraph "22" of the Amended Complaint herein, the present saleable value of Joseph Newman's assets after the transfer was made was less than $96,000.00.

"20. On the date of the transfer of $40,000.00 by Joseph Newman to J.E.S. described in paragraph "22" of the Amended Complaint, Joseph Newman's total liabilities, including the Chrysler judgment referred to in paragraph "11" hereof totalled more than $96,200.00.

"21. On the date of the transfer of $40,000.00 by Joseph Newman to J.E.S. described in paragraph "22" of the Amended Complaint herein, the present saleable value of Joseph Newman's assets remaining after the transfer was made totalled less than the amount that was required to pay Joseph Newman's probable liability on his existing debts as they became absolute and mature."

10. From the foregoing Admissions, it must be found that the defendants have admitted that on September 17, 1979, when the debtor transferred the NRM promissory notes totalling approximately $97,000. to his father-in-law, the defendant, Andrew Charla, he was thereby rendered insolvent within the meaning of Code § 101(26) and Section 271 of the New York Debtor and Creditor Law.

11. It must be further found that the defendant has admitted that when the debtor transferred $40,000 in cash to J.E.S. Equities Corp. on November 15, 1979, he was insolvent within the meaning of Code § 101(26) and Section 271 of the New York Debtor and Creditor Law.

12. The transfer of the promissory notes on September 17, 1979, and the transfer of $40,000 in cash on November 15, 1979, were both made by the debtor within one year before the date of the filing of the involuntary petition in bankruptcy against the debtor.

## DISCUSSION
## SECOND CAUSE OF ACTION

The second cause of action in the trustee's complaint alleges a fraudulent transfer by the debtor in violation of Code § 548(a)(2) under circumstances where the debtor's actual intent to hinder, delay or defraud creditors is irrelevant because constructive intent is presumed as a result of a transfer by the debtor for less than a reasonably equivalent value made at a time when the debtor was insolvent and within one year before the date of the filing of the petition. The governing language in Code § 548(a)(2) is as follows:

"(a) The trustee may avoid any transfer of an interest of the debtor in property ... that was made ... within one year before the date of the filing of the petition, if the debtor ___

. . . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made ... or became insolvent as a result of such transfer ...".

The term "insolvent" is defined in Code § 101(26) as follows:

"(A) with reference to an entity other than a partnership, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at the fair valuation, exclusive of ___

(i) property transferred, concealed, or removed with intent to hinder, delay or defraud such entity's creditors; and

(ii) property that may be exempted from property of the estate under section 522 of this title; ...."

Having admitted the facts set forth in paragraphs 18 through 21 of the Trustee's Request for Admissions, the debtor has admitted insolvency within the meaning of Code § 106(26) on November 15, 1979, before and after the debtor's transfer of $40,000. to J.E.S. in exchange for the J.E.S. promissory note. Since the transfer was within one year before the filing of the involuntary petition against him (it was made within 15 days before the filing of the involuntary petition), the only issue remaining is whether or not such transfer was for less than a reasonably equivalent value.

The defendants have admitted in response to the trustee's Request for Admissions that on November 15, 1979, when the debtor transferred $40,000 in cash to J.E.S. in exchange for a promissory note in the amount of $40,000, with a pay-out period of 36 years and 11 months, commencing November 15, 1982, at an interest rate of 7% per annum, the discounted value of such note at a lending institution was less than $40,000. The trustee submitted an affidavit in support of his motion and in connection with his Requests for Admissions from an official at Financial Publishing Company, engaged in the business of computing mathematical tables, to the effect that the discounted value of the J.E.S. note was less than $12,500. (Assuming that J.E.S. had existed during the nearly 37 year period and had the capacity to pay). It does not require the services of an expert on mathematical computations to conclude that a $40,000 note from J.E.S. (controlled by the debtor's children), payable to the debtor over a period of nearly 37 years at 7% interest is not the reasonable equivalent of $40,000 in cash on hand now. Surely, the creditors of this estate should not be directed to accept $40,000 over a period of 37 years with interest at 7% per annum as the reasonable equivalent of $40,000 in cash to-

day, especially since the defendants have admitted that the discounted value of the note was less than $40,000 when the exchange was made.

■ Thus, there is no genuine disputable question of fact that the debtor transferred $40,000 to the defendant, J.E.S., on November 15, 1979, within one year before the filing of the involuntary petition on November 24, 1979, and received less than a reasonably equivalent value in exchange for such transfer at a time when the debtor was insolvent. Accordingly, the trustee is entitled to recover the fraudulent conveyance of $40,000 from J.E.S. pursuant to Code § 548(a)(2).

## SEVENTH CAUSE OF ACTION

The seventh cause of action recites the same facts as alleged in the second cause of action with respect to the debtor's transfer of $40,000 in cash to J.E.S. on November 15, 1979, in exchange for the J.E.S. note payable from June 15, 1982, with a pay-out period of 36 years and 11 months, at 7% interest per annum. This cause of action is pitched to Section 273 of the New York Debtor and Creditor Law, which is similar to Code § 548(a)(2) and reads in part as follows:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Section 271 of the New York Debtor and Creditor Law is similar to Code § 101(26)(A) and defines insolvency as follows:

"A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured."

■ The trustee in bankruptcy may invoke applicable state law, such as the New York Debtor and Creditor Law, to avoid a transfer proscribed under such law if, in accordance with Code § 544(b), there actually existed a creditor holding an unsecured claim who could avoid the transfer. In such case, the trustee may step into the shoes of the unsecured creditor and set aside the transfer for the benefit of the estate. *Moore v. Bay*, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931).

■ In this case, Chrysler Credit Corp. held an unsecured claim against the debtor in the form of a judgment, in the sum of $96,241.44 which was docketed on September 19, 1979, prior to the debtor's $40,000. transfer to J.E.S. on November 15, 1979. Therefore, the trustee may assert Chrysler's rights in attacking the debtor's transfer.

There is no genuine disputable fact as to each and every element with respect to the trustee's avoiding power under Section 273 of the New York Debtor and Creditor Law. The $40,000 transfer by the debtor to J.E.S. when he was admittedly insolvent on November 15, 1979, was made without fair consideration.

Fair consideration is defined in Section 272 of the New York Debtor and Creditor Law, in pertinent part as follows:

"Fair consideration is given for property or obligations,

a. When in exchange for such property or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

b. When such property or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained."

■ Having found that the J.E.S. promissory note payable to the debtor over a period of nearly 37 years, with interest at 7% per annum, with the first payment to commence on November 15, 1982, is not the reasonable equivalent of $40,000, it is also manifest that the discounted value of such note is disproportionately small as compared with the $40,000 cash on hand now. Therefore, the debtor's transfer of $40,000

to J.E.S. was made without fair consideration within the meaning of Section 273 and 272 of the New York Debtor and Creditor Law. Hence the trustee is entitled to recover the $40,000 transfer from J.E.S. as a fraudulent conveyance as claimed in the Seventh Cause of Action.

### TWELFTH CAUSE OF ACTION

Section 273–a of the New York Debtor and Creditor Law forms the basis for the trustee's claim in the twelfth cause of action to recover the debtor's transfer of $40,000 to J.E.S. on November 15, 1979. This Section reads as follows:

> "Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment."

■ Neither actual intent to defraud nor insolvency at the time of the transfer need be shown. A transfer without fair consideration is fraudulent as to an existing unpaid creditor whose judgment was docketed against the debtor at the time of the transfer. *In re Russo*, 1 B.R. 369 (B.C.E.D.N.Y. 1979), affirmed September 11, 1980, (D.C.E. D.N.Y., Nickerson, D.J.).

In this case, Chrysler held a docketed judgment for $96,241.44 when the debtor transferred $40,000 to J.E.S. on November 15, 1979, which judgment has not been satisfied. It has also been found that the J.E.S. note for $40,000 with a pay-out period of 36 years and 11 months at 7% interest per annum and with the first payment to be made on November 15, 1982, was disproportionately small as compared with $40,000 in cash so as not to constitute fair consideration.

■ Accordingly there is no genuinely disputable question of fact for determination in the twelfth cause of action. The trustee is entitled, as a matter of law, to recover the fraudulent conveyance of $40,000 from J.E.S. pursuant to Section 273–a of the New York Debtor and Creditor Law.

### FIRST, THIRD AND ELEVENTH CAUSES OF ACTION

These causes of action relate to the debtor's transfer on September 17, 1979, six days after the jury verdict in favor of Chrysler, of a series of promissory notes payable to NRM, totalling approximately $97,000, to his father-in-law, the defendant, Andrew Charla, for $54,500 in cash. The first cause of action invokes Code § 548; the third cause of action is based on Section 273 of the New York Debtor and Creditor Law, and the eleventh cause of action relies upon Section 273–a of the New York Debtor and Creditor Law. Central to all three causes of action is the crucial issue as to whether or not the debtor's receipt of $54,500 in cash from the defendant, Andrew Charla, is a reasonably equivalent value and fair consideration for the debtor's transfer of the NRM notes totalling approximately $97,000. The debtor has admitted that this transfer rendered him insolvent and that it was made within one year of the filing of the involuntary bankruptcy petition. He has also admitted the existence of the Chrysler judgment docketed against him which has not been satisfied.

■ Unlike the second, seventh and twelfth causes of action, where the debtor admitted that the discounted value of the $40,000 J.E.S. note he received in exchange for his transfer of $40,000 in cash to J.E.S. was less than $40,000 when the exchange was made, there is no such admission as to the discounted value of the NRM notes. Therefore, there exists a question of fact that must be established by the evidence as to whether or not the debtor's receipt of $54,500 from the defendant, Andrew Charla, in exchange for the notes, totalling approximately $97,000, constitutes a reasonably equivalent value within the meaning of Code § 548, or fair consideration as defined in Section 272 of the New York Debtor and Creditor Law. Therefore, the trustee's motion for summary judgment must be denied as to these causes of action.

## DEFENDANTS' COUNTERCLAIMS

The defendants have raised four counterclaims against the trustee:

"The first counterclaim alleges the Trustee engaged in "tortious conduct" by instituting action to recover fraudulent transfers with no lawful purpose, with the purpose of harming defendants, without economic or social justification and for the Trustee's collateral advantage or corresponding detriment to defendants which is outside the legitimate ends of process.

"Defendants' second counterclaim alleges that the Trustee subjected defendants to continuous examinations, commenced this "frivolous" suit which the Trustee knew or should have known had no merit to recover properties which the Trustee was and is not entitled to receive, and that these actions were adverse to the orderly administration of the estate and to the best interests of all the creditors in violation of the trustee's duties. Defendants allege that the Trustee's actions were carried out pursuant to a conspiracy to harass, intimidate and coerce defendants.

"Defendants' third counterclaim repeats the allegations of the first two counterclaims, characterizes the Trustee's conduct in instituting this suit as "wrongful, wanton, reckless, and careless," and seeks removal of the Trustee.

"Defendants' fourth counterclaim again alleges that the Trustee commenced this "frivolous" suit with the *sole* intention of inflicting harm and damage upon the defendants, that the Trustee knew this was wrongful, malicious, wanton, reckless, careless and improper and would unjustly injure and damage defendants, and that this action was instituted pursuant to a conspiracy to give Chrysler Credit Corp. an unjustified gain and to harass defendants."

In light of the defendants' admissions in this case, it is evident that all four counterclaims are insufficient in law and without merit. The trustee in bankruptcy is an officer of the court and a fiduciary charged with the protection of this estate for the benefit of its creditors. As such, he is required to commence actions to set aside fraudulent conveyances. His actions were proper. Indeed, he is entitled to summary judgment with respect to the second, seventh and twelfth causes of action. Having sustained his position as to these causes of action, it cannot be said that he acted tortiously, frivolously, wrongfully, maliciously, wantonly, recklessly, carelessly or improperly. Hence, the defendants' four counterclaims are dismissed as baseless.