In re Dennis PAPPAS, Debtor.

Allan B. Mendelsohn, Chapter 7
Trustee for Dennis J. Pappas,
Plaintiff–Appellee,

v.

Andrea Pappas, Defendant–Appellant.

No. 98–CV–4161.
Bankruptcy No. 96–73437–511.
Adversary No. 97–7196–511.

United States District Court,
E.D. New York.

Sept. 30, 1999.

Edward K. Blodnick, Blodnick Gordon Blodnick & Zelin, Jericho, NY, Isaac Nutovic, Nutovic & Associates, New York City, for appellant.

Nathan Schwed, Zeichner Ellman & Krause, New York City, for appellee.

### *MEMORANDUM & ORDER*

SEYBERT, District Judge.

This bankruptcy appeal stems from the May 8, 1998 Order of United States Bankruptcy Judge Melanie L. Cyganowski, which granted summary judgment to Plaintiff–Appellee Allan B. Mendelsohn, Chapter 7 Trustee for Debtor Dennis J. Pappas, on the First and Sixth Claims for Relief. Also relevant to this appeal, this Order avoided and set aside the Debtor's transfer to Defendant–Appellant Andrea Pappas of his interest in property located in Oyster Bay, New York, and awarded judgment to the Trustee in the amount of $320,007.76 plus interest.

For the reasons discussed below, the order of the Bankruptcy Court is affirmed in all respects.

## BACKGROUND[1]

Although the facts involved in this case are extensive, the facts involved in the present appeal are quite discrete. Dennis J. Pappas ("Dennis" or "Debtor") filed a voluntary petition for relief pursuant to Chapter Seven of the Bankruptcy Code on July 17, 1996. Although this petition originally was filed in the United States Bankruptcy Court for the Southern District of New York, it subsequently was transferred to the Eastern District of New York. The complaint in this action was filed by the Plaintiff Trustee on October 22, 1997. A month later, the Defendant Andrea Pappas ("Andrea") served an answer and counterclaims.

Relevant to the present appeal and to the Debtor's bankruptcy petition is a lawsuit filed against the Debtor by John Marshall ("Marshall") on or about December 20, 1985. This action (the "Marshall action"), which was brought in New York State Supreme Court, Nassau County, sought several million dollars in damages from the Debtor. On June 2, 1993, a settlement conference was held in conjunction with the Marshall action. The Debtor was present, as was Marshall. Although not perfectly clear from the record, it appears that during this conference, the Marshall action was scheduled for trial in September, 1993.

A week or so after the conference, on June 11, 1993, the Debtor transferred to his wife Andrea, the Defendant here, all of his right, title and interest in property located in Oyster Bay Cove, New York (the "Oyster Bay property"). Dennis and Andrea originally acquired the Oyster Bay property as tenants by the entirety in March 1984. The transfer of his interest in the property to Andrea was effectuated subject to the existing first mortgage.

It is not disputed that the conveyance of the Oyster Bay property to Andrea was made without any consideration. Additionally, the Debtor remained liable on the mortgage subsequent to the conveyance to his wife. Moreover, following the conveyance, the Debtor retained use of the Oyster Bay property and continued to live there.

On October 9, 1993, Andrea Pappas sold all of her right, title and interest in the Oyster Bay property to Marr International Oil Corporation for the sum of $1,150,000. Upon closing this transaction, Andrea and Dennis paid approximately $429,900.32 in satisfaction of the existing mortgage on the Oyster Bay property. At or near the same time, Andrea received approximately $640,015.52 from the proceeds of the sale of the Oyster Bay property to Marr International.

Eight months later, in May 1994, Andrea Pappas purchased a home located on Hamlet Road in Commack, New York (the "Hamlet property"). Andrea Pappas obtained a $350,000 mortgage loan from NatWest Mortgage Corporation upon closing of this purchase. Andrea Pappas also used a portion of the proceeds from the sale of the Oyster Bay property to finance this purchase.[2] Title to the Hamlet property was taken in Andrea Pappas's name only, even though Dennis Pappas joined Andrea as a borrower and obligor on the $350,000 NatWest Mortgage, and resided in the Hamlet property after its acquisition.

1. This recitation of facts is taken from the parties' respective statements pursuant to Local Bankruptcy Rule 7056-1. *See also* Transcript of Proceedings before Hon. Melanie L. Cyganowski ("Bankr.Tr."), April 7, 1998, at 36–41.

2. At oral argument held on March 26, 1999, the Debtor stated that the price of the Hamlet property was $640,000, and the NatWest mortgage was $350,000. When asked by the Court what happened to the remaining funds, after subtracting the $350,000 mortgage from the $640,000 in proceeds from the sale of the Oyster Bay property, Debtor's counsel responded that the Debtor and his wife "spent it on legal fees." Transcript of Argument before United States District Court ("Dist.Ct.Tr."), March 26, 1999, at 12.

Turning back to the Marshall action, a decision was issued on July 9, 1996 by the Honorable Irving Tannenbaum, Referee, awarding judgment to Marshall. On July 17, 1996, judgment was entered against Dennis Pappas in the amount of $4,666,-000.38. On the same day, Dennis Pappas filed his bankruptcy petition under Chapter Seven of the Bankruptcy Code.

For his part, the Debtor and the Appellant have defended the transfer of the Debtor's entireties interest to the Appellant on the grounds that because of the Debtor's ill health, his survivorship interest in the Oyster Bay property was negligible or de minimus, since he was virtually certain to predecease his wife. The Debtor and the Appellant also claimed, in their attempt to avoid summary judgment in the Bankruptcy Court, that all of the proceeds from the sale of the Oyster Bay property were used exclusively to purchase the Hamlet property, in accordance with an order issued in the Marshall action by Justice James J. Brucia on December 21, 1993.[3] *See* Defendant's Statement Pursuant to Local Rule 7056–1, ¶ 11.

### LEGAL STANDARD

Rule 8013 of the Federal Rules of Bankruptcy Procedure establishes the standard governing a district court's review of a bankruptcy judge's order. This rule provides:

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed.R.Bankr.P. 8013. A factual finding is "clearly erroneous" when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948).

■ On the other hand, a bankruptcy judge's legal conclusions are reviewed *de novo. See In re Dill,* 163 B.R. 221, 224 (E.D.N.Y.1994) (citing *In re Ionosphere Clubs Inc.,* 922 F.2d 984, 988 (2d Cir. 1990)). Mixed questions of law and fact also are to be reviewed *de novo. In re PCH Assoc.,* 949 F.2d 585, 599 (2d Cir. 1991).

Because this case was decided on a summary judgment motion brought by the Plaintiff–Appellee Trustee, a review of the summary judgment standard is appropriate. Bankruptcy Rule 7056 directs that Fed.R.Civ.P. 56 applies in adversary proceedings.

Pursuant to Fed.R.Civ.P. 56, "[s]ummary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." *In Re Blackwood Assoc., L.P.,* 153 F.3d 61, 67 (2d Cir.1998) (citing Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

In deciding a summary judgment motion, the court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *Castle Rock Entertainment, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir.1998) (citing *Garza v. Marine Transp. Lines, Inc.,* 861 F.2d 23, 26 (2d Cir.1988)). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the nonmovant, summary judgment is unavailable. *See Holt v. KMI–Continental, Inc.,* 95 F.3d 123, 128 (2d Cir.1996). The court's re-

---

**3.** This alleged statement of fact was flatly contradicted by Appellant's counsel at oral argument, who admitted that the excess funds were used to pay attorney's fees. *See* footnote 2, *supra.*

sponsibility is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 522 (2d Cir.1996) (quoting *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994)).

When there is nothing more than a "metaphysical doubt as to the material facts," a grant of summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In order to deny summary judgment as to a particular claim, there must exist "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

In order to facilitate a Bankruptcy Court's determination of a motion for summary judgment, litigants are required to abide by Rule 7056–1 of the Bankruptcy Court's local rules. This rule provides that

> Upon any motion for summary judgment pursuant to Bankruptcy Rule 7056, there shall be annexed to the notice of motion a separate, short and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.... The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried. *All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.* Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, set forth as required by Federal Rule of Civil Procedure 56(e).

Rule 7056–1, Local Rules for the United States Bankruptcy Court for the Eastern District of New York (emphasis added).

It is against this backdrop that the Court reviews the present appeal.

## DISCUSSION

### I. Issues Presented on Appeal

Appellant Andrea Pappas presents the following issues on appeal: [4]

A. Whether the Bankruptcy Court properly concluded that Appellee was authorized to invoke Section 273–a of the New York Debtor and Creditor Law;

B. Whether the Bankruptcy Court properly concluded, as a matter of law, that the value of Dennis Pappas's joint interest by the entireties in the Oyster Bay property was to be measured without regard to Appellant's survivorship rights;

C. Whether the Bankruptcy Court erred in failing to award the value of "such property" transferred, with regard to the Oyster Bay property, pursuant to 11 U.S.C. § 550(a); and

D. Whether the Bankruptcy Court properly granted summary judgment to Appellee regarding the issue of whether the Hamlet House

---

**4.** Pursuant to Bankruptcy Rule 8006, a bankruptcy appellant is required to serve and file a designation of items to be included in the Record on Appeal, along with a statement of the issues to be presented. The Court points out that the item listed as number 14 in the Appellant's Designation of Record on Appeal, which was the transcript of the April 7, 1998 oral argument before Judge Cyganowski, was not provided to the Court by the Appellant until July 9, 1999, following a telephone call to Appellant's counsel by chambers. The Court also points out that the only statement of issues appearing in this record is contained in Appellant's Brief, at pages 1–2. However, because the statement of issues included in the brief is rather slanted, the Court has framed the issues in a more neutral manner in order to facilitate its review of the Order of the Bankruptcy Court.

was a substitute for the Oyster Bay property.

## II. Analysis of Issues

As an initial matter, the Court has reviewed each of the factual predicates upon which the Bankruptcy Court based its decision, and has determined that none of the court's factual findings are clearly erroneous. In particular, the Court has examined the parties' respective statements submitted to the Bankruptcy Court pursuant to Local Bankruptcy Rule 7056–1, and has considered the mandate of the rule that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Comparing the parties' Rule 7056–1 statements, it is clear that the Appellant–Defendant failed to controvert the essential material facts as set forth by the Appellee–Plaintiff's statement, and thus the Bankruptcy Court properly deemed as admitted those uncontroverted facts.[5]

### A. Trustee's Reliance on § 273–a of N.Y. Debt. & Cred. Law

The Appellant's first argument is that the Trustee has no standing to bring an action under Section 273–a of the New York Debtor and Creditor Law because this section of the statute is personal to a particular creditor, and cannot be asserted against third parties for the benefit of the estate. The statute states that

> [e]very conveyance made without fair consideration when the person making it is a defendant in an action for money damages, or a judgment in such an action has been docketed against him, is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

N.Y. Debt. & Cred. Law § 273–a (McKinney 1990). Appellant argues that the language "as to the plaintiff in that action" restricts the application of this section only to that plaintiff—here, John Marshall. Thus, Appellant claims that the Trustee cannot avoid a transfer in reliance on this statute.

The Trustee asserts that the Appellant has waived her right to bring this argument because she failed to raise it in the Bankruptcy Court. The Trustee also argues that, as a matter of law, the remedies provided by N.Y. Debt. & Cred. Law § 273–a are available to the Trustee by virtue of 11 U.S.C. § 544(b), which authorizes a trustee to avoid a transfer that is avoidable under applicable law by a creditor holding an unsecured claim against the Debtor.

### 1. Failure to Raise Argument in Bankruptcy Court

■ It is undisputed that the Appellant failed to raise this argument in the Bankruptcy Court. As a general rule, an appellate court will not address arguments that initially were not presented to the lower court. *Hormel v. Helvering,* 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037 (1941) ("[o]rdinarily an appellate court does not give consideration to issues not raised below"); *see also Scottish Air Int'l, Inc. v. British Caledonian Group, PLC,* 860 F.2d 57, 60 (2d Cir.1988) (refusing to reach merits of litigation where lower court had not done so); *Davis v. Musler,* 713 F.2d 907, 917 (2d Cir.1983) (Van Graafeiland, J., concurring) ("this Court ordinarily does not consider arguments that were not presented first to the district court"); *In re Macrose Indus. Corp.,* 186 B.R. 789, 802 (E.D.N.Y.1995) (refusing to entertain arguments raised for first time on appeal); *Commercial Credit Corp. v. Reed,* 154 B.R. 471, 474 (E.D.Tex.1993) ("a party appealing from a Bankruptcy Court opinion may

---

**5.** In this regard, Judge Cyganowski, in her recitation of facts, indicated that there really was "no dispute among the parties" as to the essential facts of the case. Bankr.Tr. at 36. There was no error in this finding.

not raise issues on review that were not raised at the trial level"); *In re Ionosphere Clubs, Inc.*, 114 B.R. 379, 388 (S.D.N.Y. 1990), *aff'd in part and rev'd in part*, 922 F.2d 984 (2d Cir.1990) ("[a]rguments or issues not raised before a lower court ordinarily are not addressed on appeal").

■ However, where the proper resolution of a dispute is beyond any doubt or where manifest injustice would occur, an appellate court may, in its discretion, consider issues that were not addressed in the first instance by a lower court. *See Davis*, 713 F.2d at 917; *Macrose Indus.*, 186 B.R. at 802; *Reed*, 154 B.R. at 474; *Ionosphere Clubs*, 114 B.R. at 388. An appellate court's decision to consider arguments raised for the first time on appeal is strengthened "where the argument is clearly presented by the record." *Ionosphere Clubs*, 114 B.R. at 388.

■ In this case, it certainly would have been preferable for the Appellant to make the present argument to the Bankruptcy Court in the first instance. However, the Court finds that the argument is clearly presented by the record. Additionally, the issue raised by this argument is purely an issue of law, and the parties have devoted considerable energy in advancing and opposing the argument. Therefore, the Court will exercise its discretion to address this argument on the merits.

2. Merits of Argument

■ The Appellant concedes that John Marshall can avoid the Oyster Bay conveyance under § 273–a of the New York Debtor and Creditor Law. Appellant argues, rather, that the Trustee may not avoid the Oyster Bay conveyance because § 273–a restricts application of the statute to "the plaintiff in that action." In other words, Appellant argues that the Trustee may not stand in Marshall's shoes and avoid the Oyster Bay conveyance.

■ Section 544(b)(1) of the Bankruptcy Code authorizes a trustee to "avoid any transfer of an interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim." 11 U.S.C. § 544(b)(1) (West Supp.1999). This statute grants to the trustee an extraordinary power to step into the shoes of unsecured creditors and avoid any transfer of a debtor's interest in property that is voidable under governing law. *See In re Fair*, 142 B.R. 628, 630 (Bankr.E.D.N.Y.1992) (discussing trustee's application of 11 U.S.C. § 544(b) to avoid a transfer pursuant to N.Y. Debt. & Cred. Law § 273–a).

Appellant has cited no case law in support of the proposition that the trustee cannot avoid a transfer of property pursuant to § 273–a of the New York Debtor and Creditor Law, nor has this Court's research uncovered any support for this argument. In fact, there is ample case law to support the opposite proposition. *See, e.g., In re Fair*, 142 B.R. at 630–31; *In re Fill*, 82 B.R. 200, 219–20 (Bankr.S.D.N.Y. 1987); *In re Newman*, 11 B.R. 628, 634 (Bankr.S.D.N.Y.), *aff'd*, 15 B.R. 658 (S.D.N.Y.1981); *Matter of Russo*, 1 B.R. 369, 378–79 (Bankr.E.D.N.Y.1979).

Appellant's focus on the language of § 273–a is off the mark. Instead, the locus of the Trustee's power lies in the federal statute, 11 U.S.C. § 544(b), which empowers the Trustee to avoid *any* transfer that is voidable under applicable law. There is no dispute that under applicable law, that is, § 273–a, Marshall could avoid the Oyster Bay conveyance. The Oyster Bay conveyance clearly qualifies as "any" transfer voidable under applicable law. Therefore, the Trustee is authorized to exercise the broad powers granted in 11 U.S.C. § 544(b)(1) to avoid the transfer on behalf of the estate.

The Court's holding on this issue is strengthened by the fact that in a September 10, 1997 affidavit presented to the Bankruptcy Court, the Debtor argued that the cause of action brought by Marshall pursuant to § 273–a "belongs to the Trustee, not Mr. Marshall." Affidavit of Paul

Dahlman, September 10, 1997, ¶ 20. The Court will not permit the Debtor and his Appellant spouse to switch positions depending on which way the wind is blowing. The Debtor's previous counsel was correct two years ago in arguing that the cause of action brought pursuant to New York Debtor & Creditor Law § 273–a belongs to the Trustee of the Debtor's bankruptcy estate.

The Court has considered and rejected Appellant's argument that *In re Colonial Realty Co.*, 168 B.R. 506 (Bankr.D.Conn. 1994), requires a different result. *Colonial Realty* involved the interaction and interpretation of two federal statutes, 11 U.S.C. 544(b) and 12 U.S.C. § 1821(d), and has nothing to do with § 273–a of the New York Debtor & Creditor Law. It is curious that Appellant urges that the Court adopt a specific, restrictive interpretation of § 273–a, but then presents as her only support a case that does not even mention § 273–a. The *Colonial Realty* case is wholly irrelevant to the issues presented in this appeal.

The Appellant's remaining arguments likewise are without merit. The Bankruptcy Court committed no error when it concluded that Appellee was authorized to invoke § 273–a, and thereby stand in Marshall's shoes to avoid the Oyster Bay conveyance. The Bankruptcy Court's holding on this matter will not be disturbed.

### B. Valuation of Dennis Pappas's Interest in the Oyster Bay Property

The issue of the value of Dennis Pappas's interest in the Oyster Bay property is important for two reasons. First, if Appellant is correct in asserting that Dennis Pappas's interest in the property at the time of transfer to the Appellant was next to nothing because of his age and ill health,

the issue arises whether, on these facts, no consideration was fair consideration. That is, if Dennis Pappas's interest was as minuscule as claimed, then the absence of consideration in exchange for the interest could be considered, in fact, a fair consideration. Put another way, the Appellant argues that if the value of Dennis Pappas's interest was nothing or next to nothing, then Andrea's having given nothing for its transfer was fair consideration. If that were the case, then because the conveyance would have been made for fair consideration, § 273–a would not apply to the transfer.[6]

The second reason the issue of valuation is important is that valuation is a vital element in fashioning a remedy for the statutory violation. Thus, if the court determines—as was the case here—that Dennis Pappas's interest in the Oyster Bay property was valuable, and, as conceded by Appellant, that no consideration was given, then the transfer was fraudulent pursuant to the plain language of § 273–a. *See In re Fill*, 82 B.R. at 220. Once a determination is made that the conveyance was fraudulent, the court must fashion a remedy that will protect the interests of the estate without creating an inequitable result for any other interested party—here, Appellant Andrea Pappas.

In this case, the Appellant argued before the Bankruptcy Court that the Oyster Bay conveyance was not fraudulent because Dennis's entireties interest was de minimus at best. Appellant also argued that, if the Bankruptcy Court were to find that the transfer was fraudulent, then it was required to fix the value of the interest by taking into consideration the market value of Dennis's entireties interest at the time the transfer was made on June 11, 1993. Bankr.Tr. at 26–27.[7]

---

6. Appellant does not explicitly pursue this argument on appeal, but rather limits the discussion in her papers to the argument that the Bankruptcy Court's order "should be reversed because the Court failed to conduct an evidentiary hearing as to the market value of the

Dennis Pappas Entireties Interest as transferred." Appellant's Brief, at 9.

7. Specifically, Appellant's counsel argued that "[t]he number that's important is the value of Dennis Pappas's entireties interest when he

Appellee, for his part, argued before the Bankruptcy Court that it was undisputed that (1) the Oyster Bay property originally was jointly owned by Dennis and Andrea; (2) it was transferred without consideration; (3) the transfer was made while the Marshall action was pending; and (4) the Marshall action resulted in a several million dollar judgment against Dennis. Bankr.Tr. at 14. Regarding the remedy, the Trustee argued that once Andrea Pappas became the sole owner of the Oyster Bay property, the tenancy by the entirety was destroyed. *Id.* at 18. In the alternative, Appellee argued that if the tenancy by the entirety was not destroyed at the time of Dennis's conveyance to Andrea, it certainly was destroyed when the property was sold to Marr International, because New York law does not recognize a tenancy by the entirety in personalty. *Id.* at 19. Because under either scenario the tenancy by the entirety was terminated, Appellee argued that the proper remedy was an award of half of the net proceeds of the sale of the Oyster Bay property, or approximately $320,000. *Id.*

The transcript of the proceedings before the Bankruptcy Court reflects the court's thoughtful and deliberate consideration of the arguments presented by both sides. Bankr.Tr. at 18–34, 40–48. Following argument, Judge Cyganowski rejected Appellant's argument that the value of Dennis's interest in the property was zero or

close to it. Although the Bankruptcy Court confessed that it was intrigued by the Appellant's argument, the court declined to permit "a defense that every person other than one who is . . . sick, ill, infirm or dying, could be held liable under [the fraudulent conveyance] statute[s], except for them." Bankr.Tr. at 44. Judge Cyganowski determined that the type of analysis urged by the Appellant was not that which was intended by the state legislature nor by Congress. *Id.*

■ Therefore, the Bankruptcy Court held that the value of Dennis Pappas's interest in the Oyster Bay property was much more than minuscule or de minimus, and because it had such value, and because no consideration was given in exchange for that value, the Trustee was entitled to summary judgment on the First Claim for Relief. Bankr.Tr. at 47. This Court finds no error in the Bankruptcy Court's holding that § 273–a was in fact violated, and that a fraudulent conveyance occurred.[8]

■ The Bankruptcy Court then turned to the issue of how to provide a remedy for the violation of § 273–a. Judge Cyganowski rejected the Appellant's argument that Dennis's interest should be valued only by looking to its value on the date of the fraudulent transfer. Bankr.Tr. at 44. Doing so, stated Judge Cyganowski, "necessarily means that a Court and creditors

---

made the transfer. . . . On June 11, 1993, what would anyone have paid Dennis Pappas for his entirety interest in this property? They would have looked at a man who was a little older than his wife and they would have looked at a man in extremely poor health and who was extremely unlikely to outlive his wife. If Dennis Pappas had tried to find somebody on the street to buy his entirety interest, at that point, Jeez, I might have offered a dollar. Dennis Pappas, it is not the value of the property to Andrea Pappas that matters, it is not the value of the property to someone Andrea Pappas gave clear title to sometime later that mattered, it's what was the value to a creditor of Dennis Pappas's when the transfer was made. . . . What would somebody pay for the gamble that Dennis would outlive his wife?" Bankr.Tr. 26–27.

8. The simple fact that Dennis Pappas's entireties interest was restricted or subject to Andrea Pappas's survivorship rights prior to June 1993 does not, a fortiori, mean that Dennis Pappas's interest had no value. On this record, Andrea Pappas's entireties interest was restricted or subject to Dennis Pappas's survivorship rights as well, yet no one claims that Andrea's interest also was minuscule or de minimus. While it may be true that Dennis Pappas was a very ill man in 1993, the Court has no balancing evidence before it regarding the state of Andrea Pappas's good health or lack thereof in 1993. In this regard, the Appellant has presented an extremely one-sided argument.

would be without any type of objective consideration of value, and would be at the mercy of the very party as against whom there are claims of fraud." *Id.* Instead, the Bankruptcy Court chose to "step back and view the underlying property as to which there was a conveyance, and as to that alone make a determination" of value. *Id.*

The Bankruptcy Court then awarded judgment to the Trustee in the amount of $320,007.76, together with interest from October 9, 1993 (the date the Oyster Bay property was sold to Marr International Oil Corporation).[9] The Appellant argues that the Bankruptcy Court erred in its valuation of the Debtor's interest in the Oyster Bay property, and should have conducted an evidentiary hearing regarding the market value of Dennis Pappas's interest in the Oyster Bay property at the time of his conveyance to his wife.

In this regard, it is important to consider exactly what the Bankruptcy Court ordered. Relevant to the Oyster Bay property, the court (1) ordered that the Trustee was granted summary judgment; (2) ordered that Dennis's transfer to Andrea of his interest in the Oyster Bay property was avoided and set aside; and (3) ordered that the Trustee was entitled to judgment in the amount of $320,007.76, plus interest. *See* May 6, 1998 Order. Thus, it is clear that Judge Cyganowski avoided the June 1993 transfer and set it aside. With that perspective, the Court can properly address Appellant's argument.

In the Court's view, the Appellant simply attempts to create a conflict that does not exist. The Bankruptcy Court avoided the June 11, 1993 transfer. Bankr.Tr. at 47; May 6, 1998 Order at 2–3. This avoidance therefore placed the property back

into the same position it had been prior to June 11, 1993, that is, the property was held by Dennis and Andrea Pappas as tenants by the entirety. *See* Bankr.Tr. at 47. This tenancy by the entireties in the Oyster Bay property continued until it was broken in October 1993 by the sale of the property to Marr International. *Id.* The Bankruptcy Court then held that upon the termination of the tenancy by the entireties, the proceeds of the sale were held as tenants in common. *Id.* Finally, the court granted the trustee a sum equaling one-half of the net proceeds received by Appellant, or, half of $640,015.52. *Id.* at 47–48.

This Court finds no error of law in the analysis of the Bankruptcy Court, nor in the result reached. As stated on the record, the court faced a question whether to award damages or fashion an equitable recovery for the violation of § 273–a. Bankr.Tr. at 47. Judge Cyganowski stated that

> regardless of whether or not equitable relief is provided and the Trustee is placed back in the position the creditor would have been in had the conveyance not taken place on June 11, 1993, in brief, namely that the Trustee would hold the interest of the debtor as a tenant by the entirety, there is no dispute that in October of '93, the property was thereafter transferred to a third party. Any tenancy-by-the-entirety relationship was, therefore, broken, and it is undisputed that the relationship then became one of tenants in common ...

Bankr.Tr. at 47.

■■ In other words, there is no quarrel with the fact that Judge Cyganowski could have provided equitable relief in the form of placing the Trustee in Dennis Pappas's place.[10] On the other hand, the court

---

**9.** The Bankruptcy Court calculated that the Appellant had received net proceeds of $640,-015.52 from the sale of the Oyster Bay property to Marr International in October 1993. The Bankruptcy Court then divided this figure by two, and awarded the Trustee one-half the

value of the net proceeds from the sale of the property. *See* Bankr.Tr., at 46–48.

**10.** In fact, this is exactly what the Bankruptcy Court did with regard to the Freeport property, an issue that is not challenged here. *See*

simply could have placed the property back as it had been prior to the June 11, 1993 transfer, that is, as being held by Dennis and Andrea Pappas as tenants by the entirety. Regardless of the manner in which it was done, and it appears to the Court that it was the latter the Oyster Bay property, subsequent to the Bankruptcy Court's avoidance of the June 11, 1993 conveyance, was held by the entireties. There is no question that the October 1993 sale of the property destroyed that tenancy by the entirety, creating instead a tenancy in common. *See National Bank and Trust Co. of Norwich v. Rickard,* 57 A.D.2d 156, 157, 393 N.Y.S.2d 801, 802 (3d Dep't 1977) ("estates by the entirety are recognized only in real property"); *see also Hawthorne v. Hawthorne,* 13 N.Y.2d 82, 83–84, 242 N.Y.S.2d 50, 51, 192 N.E.2d 20 (1963) ("there can be no holding by the entirety in personalty"). Thus, whether it was the Trustee who succeeded to half of the net proceeds, or the Trustee through Dennis Pappas by operation of law, either party (the Trustee or Dennis Pappas) held one-half of the net proceeds as a tenant in common with Appellant Andrea Pappas.

The Appellant's argument that Andrea "would almost certainly not have sold her house" in October 1993 if Dennis's entireties interest had not been transferred to her in June 1993 is purely speculative. *See* Appellant's Reply Brief, at 6. The fact remains that Andrea Pappas sold the Oyster Bay property, a transaction which unquestionably terminated the tenancy by the entirety. Appellant's ruminations about what might have happened to Dennis Pappas had he not moved from Oyster Bay to the Hamlet property in Commack likewise are without merit. Reply Brief, at 6. In fact, this argument borders on frivolity given that the Hamlet property was not purchased until approximately a year later, an issue that is considered in Part II.D., *infra.*

The Appellant's argument that the Bankruptcy Court should have held an evidentiary hearing to make findings of fact as to the value of the entireties interest transferred to Andrea by Dennis is meritless. The fact of the matter is that this fraudulent transfer was avoided by the Bankruptcy Court and set aside. Thus, it was as though the transfer never occurred. However, the October 1993 sale of the Oyster Bay property certainly did occur. Given these facts, the Bankruptcy Court provided an equitable remedy for the statutory violation, and this remedy properly valued the property at its market value. The Bankruptcy Court also appropriately determined that the market value could be assessed by reference to the price at which the Oyster Bay property was sold in October 1993.

Appellant also cites *Marine Midland Bank v. Murkoff,* 120 A.D.2d 122, 508 N.Y.S.2d 17 (2d Dep't 1986), in support of her argument that the Trustee's award should not exceed the value of Dennis's entireties interest at the time it was transferred to Andrea. *See* Appellant's Brief, at 10. However, *Murkoff* does not compel a result different from that reached by the Bankruptcy Court.

In *Murkoff,* judgment creditor Marine Midland Bank succeeded in setting aside judgment debtor Murkoff's conveyance of his entireties interest to his wife. 120 A.D.2d at 125, 508 N.Y.S.2d at 20. This avoidance had occurred after Marine Midland had obtained money judgments against Murkoff for his default on several notes that he had guaranteed. 120 A.D.2d at 124, 508 N.Y.S.2d at 19.

The trial court avoided the conveyance under N.Y. Debt. & Cred. Law §§ 273 and 273–a, and awarded Marine Midland a lien against Murkoff's interest in the entirety. 120 A.D.2d at 125, 508 N.Y.S.2d at 20. However, that interest remained subject to Murkoff's wife's right of survivorship. 120 A.D.2d at 126, 508 N.Y.S.2d at 20. Dissatisfied with this encumbrance upon its interest, Marine Midland brought an appeal,

Order dated May 6, 1998, at 3–4; Bankr.Tr. at 51.

arguing that it was entitled not only to a termination of the tenancy by the entirety and a transformation of that interest into a tenancy in common, but also a money judgment against Murkoff's wife in the amount of the judgment against her husband, up to one-half the value of the property. *Id.*

The appellate court, after a lengthy review of the New York law on fraudulent conveyances, declined to provide Marine Midland with the remedy it sought. The court noted that "the relief to which a defrauded creditor was entitled in an action to set aside a fraudulent conveyance [is] limited to that which could have been obtained had there been no conveyance." 120 A.D.2d at 130, 508 N.Y.S.2d at 23. The court pointed out that, prior to Murkoff's concededly fraudulent transfer, his interest in the property was "encumbered" by his wife's right of survivorship, and had Marine Midland attempted to satisfy its judgment against Murkoff any time prior to the fraudulent conveyance, Murkoff's "interest would have been sold subject to [his wife's] right." 120 A.D.2d at 130–31, 508 N.Y.S.2d at 23.

The court explicitly noted that if it were to order that the tenancy by the entirety be transformed into a tenancy in common, the right of survivorship would have been extinguished. *Id.* The extinguishment of the right of survivorship would then give Marine Midland the ability "to assert its judgment against an undivided one-half interest in the property." *Id.* The court pointed out that if such an order would enter, the order would punish Murkoff's wife, who had not participated or encouraged the fraudulent conveyance. The court stated that "[p]unishment is not a proper basis for granting relief in a fraudulent conveyance action," and that "[d]epriving (Murkoff's wife) of her survivorship interest is plainly punitive and it is not a permissible remedy." 120 A.D.2d at 131–32, 508 N.Y.S.2d at 24. The court explicitly expressed its concern, and rightfully so, about the punitive nature of the relief sought by Marine Midland in its consideration of the issues before it. Thus, the court ultimately held that "[t]he creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the money judgment had there been no conveyance." 120 A.D.2d at 133, 508 N.Y.S.2d at 25.

However, the *Murkoff* court expressly pointed out, in response to the plaintiff's claim that it was entitled to a money judgment against defendant Murkoff's wife, that "[a] money judgment against the grantee is sometimes an available form of relief" and that "such a judgment may be granted only where the grantee has disposed of the wrongfully conveyed property or depreciated it."[11] *Murkoff*, 120 A.D.2d at 133, 508 N.Y.S.2d at 24–25 (citations omitted). The Bankruptcy court's Order awarded a money judgment against the Appellant, the grantee of the Debtor's fraudulent conveyance, in the sum of $320,007.76, which was half of the net proceeds of the sale of the Oyster Bay property. It is undisputed that the Appellant disposed of the wrongfully conveyed property (Dennis Pappas's interest), along with Appellant's own interest, four months after the fraudulent conveyance. In this regard, the Bankruptcy Court was within its authority to award a money judgment against An-

---

11. In this regard, it is interesting to note that at oral argument on this matter, Appellant's counsel represented to the Court that the Hamlet property, which Appellant seeks to have declared a "like-kind" exchange for the Oyster Bay property, has depreciated significantly since its purchase in May 1994. Upon questioning by the Court, Appellant's counsel stated that in the last three years or so, the value of the Hamlet property had "[d]eclined tremendously." Dist.Ct.Tr. at 13. Counsel further stated that the value of the property had declined because "people did not want to live in Commack so the prices kept falling down. Most prices in Nassau and Suffolk are rising, but in this particular area has dropped apparently about 25 percent." *Id.* at 14. Counsel stated that the Appellant's equity in the Hamlet property was approximately $25,000. *Id.* at 14, 16.

drea Pappas where the prerequisites for such relief were met. *See id.* (citing cases).

Moreover, there is no valid argument here that the result reached by the Bankruptcy Court is punitive to the Appellant in the manner contemplated by the *Murkoff* case. Here, Appellant is *not* being deprived of her survivorship interest. In fact, Appellant voluntarily relinquished any survivorship interest that still existed when she sold the Oyster Bay property in October 1993. Additionally, not only was Appellant able to purchase a new home—the Hamlet property—in May 1994, but she also was able to disburse approximately $290,000 in proceeds from the Oyster Bay sale to her attorney.

Finally, unlike the situation in *Murkoff,* where the plaintiff sought an affirmative termination of the defendant's tenancy by the entirety, the Trustee here does not seek such relief against Andrea Pappas. Rather, the Trustee seeks, and has been awarded, half of the net proceeds from the Appellant's sale of the property to Marr International, which sale destroyed any tenancy by the entirety that could have existed at that time. Thus, in a case such as this, where there is no punitive aspect to the Bankruptcy Court's order and judgment, and where the Appellant disposed of the property at issue (Dennis Pappas's entireties interest) shortly after the fraudulent conveyance, the Bankruptcy Court was entitled to grant a money judgment against the Appellant in the sum of one-half the proceeds from the sale of the Oyster Bay property.

In sum, *Murkoff* does not compel a result different than that achieved by the Bankruptcy Court. As there are no genuine issues of material fact in dispute, and the Court finds no error of law on this issue, the Bankruptcy Court's order is affirmed.

**C. Failure to Award Value of "Such Property" Transferred**

Whenever a court avoids a transfer under 11 U.S.C. § 544, such as happened here, § 550(a) authorizes a trustee to recover, for the estate's benefit, the property transferred or the value of such property from the initial transferee—here, Andrea Pappas.[12] Appellant, in an argument very similar to those addressed above, argues that the Bankruptcy Court should have awarded the value of "such property," that is, the value of Dennis Pappas's entireties interest, not the value of the Oyster Bay property itself. Appellant's Brief, at 12. And, according to this argument, since the Bankruptcy Court failed to assess the value of Dennis Pappas's entireties interest, the award of $320,007.76 was erroneous.

Appellee argues that the monetary judgment awarded by the Bankruptcy Court was issued to enable the Trustee to recover Dennis's tenancy in common interest in half of the net proceeds of the sale of the Oyster Bay Property. Appellee's Brief, at 22. Appellee asserts that such a remedy clearly is authorized by § 550(a)(1).

Appellant apparently abandoned this argument by the time her reply brief was filed. In the short, eight-page reply brief, Appellant failed to address this issue, and also failed to respond to the Appellee's arguments in opposition to her position. In any event, the Court agrees with the Bankruptcy Court that the remedy afforded was proper and was authorized by the statute.

**D. Hamlet House as Substitute for Oyster Bay Property**

▆ Appellant's final argument is that she is entitled to an evidentiary hearing in the Bankruptcy Court to determine whether the parties intended to treat the Hamlet

---

**12.** Section 550(a) states, in relevant part, that "to the extent that a transfer is avoided under section 544 ... of this title, the trustee may recover, for the benefit of the estate, the prop-

erty transferred, or, if the court so orders, the value of such property, from—(1) the initial transferee of such transfer...." 11 U.S.C. § 550(a) (1993).

property as a like-kind exchange for the Oyster Bay property. This argument fails as a matter of law.

The timing of the events in the record clearly demonstrates that there was no like-kind exchange. Appellant apparently believes that the proper remedy for her spouse's fraudulent conveyance is a declaration that she and the Debtor own the Hamlet property as tenants by the entireties,[13] and that this fiction can be maintained only if it is first established that there was a like-kind exchange.

Appellant states that the record "is uncontroverted as to whether the proceeds of the sale of the Oyster Bay House were used solely for the purchase of the Hamlet House." Appellant's Brief, at 14. The exact opposite is true—it is uncontroverted that the proceeds from the sale of the Oyster Bay house were *not* used solely to purchase the Hamlet House. Appellant's counsel confessed at oral argument that approximately $290,000 of the proceeds from the sale of the Oyster Bay property was spent on attorney's fees. Bankr.Tr. at 12.[14]

Regardless of the veracity of this representation, it flatly contradicts the Appellant's prior representation that all of the proceeds from the sale of the Oyster Bay property were used exclusively to purchase the Hamlet property. Defendant's Statement Pursuant to Local Rule 7056–1, ¶ 11. This statement also flatly contradicts Dennis Pappas's sworn statement that he and Andrea "sold the Oyster Bay property and used 100% of the proceeds to purchase another home." Affidavit of Dennis J. Pappas, dated March 5, 1998, at ¶ 8.

Given the inconsistent and irreconcilable positions taken by Appellant during this litigation, both here and in the Bankruptcy Court, two things are clear: (1) no like-kind exchange took place, and (2) someone is not telling the truth. The record indicates that the Oyster Bay property was sold in October 1993, but that Justice Brucia's order was not issued until two months later, in December 1993. Moreover, as indicated above, only a portion of the proceeds were used to buy the Hamlet property in May 1994.

There was no like-kind exchange here. The Bankruptcy Court did not err in refusing to treat the Hamlet property as an equivalent of the Oyster Bay property. The Court declines to entertain such a fantasy. The Order of the Bankruptcy Court is affirmed in all respects.

## CONCLUSION

For the reasons discussed above, the May 6, 1998 Order of the Bankruptcy

---

13. The Court rejects this proposed remedy outright. Such a declaration would, in practical effect, ignore the finding that the Debtor fraudulently conveyed his interest in the Oyster Bay property to the Appellant, would sanction the actions of the Debtor and the Appellant in removing approximately $290,000 from the estate, and would leave the Trustee and other creditors without any meaningful remedy.

14. Appellant's counsel, by letter to the Court dated April 30, 1999, apparently realized after oral argument that major inconsistencies existed regarding Appellant's position on this issue. The letter states that in regard to a question by the Court about the funds used to purchase the Hamlet property, "the answer I gave you was accurate, but perhaps it was not complete." Counsel continued, "I have discovered that the following occurred: [t]he money being held in the Suozzi English escrow account totaling $640,000 went directly to The Hamlet in accordance with the order of Justice Bruccia [sic]. Simultaneously therewith, a mortgage was placed on the house at The Hamlet in the sum of $350,000. It is my understanding that Judge Bruccia's [sic] Order was followed completely, and there was no restriction on any subsequent financing. To the extent, if any, I misled you, I respectfully apologize." Letter from Edward K. Blodnick to Judge Seybert, April 30, 1999. This letter fails to clear up anything. Regardless of whether Justice Brucia's December 1993 order was followed, there is still $290,000 unaccounted for by the Debtor and the Appellant, and the April 30 letter did not retract the prior statement that this money was used for attorney's fees. Thus, if anything is clear, it is that "all" of the proceeds from the Oyster Bay property were *not* used to purchase the Hamlet property.

Court is AFFIRMED in its entirety. The Clerk of the Court is directed to close this case.

SO ORDERED.